1  Ben F. Pierce Gore (SBN 128515)
   PRATT & ASSOCIATES
2  1871 The Alameda, Suite 425
   San Jose, CA 95126
3  Telephone:  (408) 429-6506
   Fax:  (408) 369-0752
4  pgore@prattattorneys.com

5  *Attorney for Plaintiff*

6

7              IN THE UNITED STATES DISTRICT COURT

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                      SAN JOSE DIVISION

10

11 PHYLLIS GUSTAVSON, individually and on        Case No. 5:13-CV-4537
   behalf of all others similarly situated,
12                                               **CLASS ACTION AND**
              Plaintiff,                         **REPRESENTATIVE ACTION**
13                                               **COMPLAINT FOR DAMAGES,**
   v.                                            **EQUITABLE AND INJUNCTIVE**
14                                               **RELIEF**
   MARS, INC. and MARS CHOCOLATE
15 NORTH AMERICA, LLC,                           JURY TRIAL DEMANDED

16            Defendants.

17

18         Plaintiff, Phyllis Gustavson, through her undersigned attorneys, brings this her Complaint

19 against Defendants, Mars, Inc. and Mars Chocolate North America, Inc. (hereinafter "Mars" or

20 "Defendants") as to her own acts upon actual knowledge, and as to all other matters upon

21 information and belief.

22                              **DEFINITIONS**

23    1.      "Class Period" is April 13, 2008 to the present.

24    2.      "Purchased Products" are the five (5) chocolate candy products listed below

25 purchased by Plaintiff during the Class Period:  (1) M&M Chocolate Candy, 1.69 oz., (2) Twix

26 Cookie Bar, 1.79 oz., (3) Dove Bar - Dark Chocolate, 3.3 oz., (4) Dove Bar - Milk Chocolate, 3.3

27 oz., and (5) Snickers Bar, 11.8 oz.  Pictures of the Purchased Products are attached as exhibits

28 hereto and specific descriptions of the relevant label representations are included below.

3. "Substantially Similar Products" are the Defendants' products listed below. Each of these products: (a) are chocolate candy products packaged the same way, if not identically, to the Purchased Products of the same type, only differing in flavor; (b) make the same label representations as described herein that were made on the Purchased Products, and (c) violate the same regulations of the Sherman Food & Drug Cosmetic Law, California Health & Safety Code § 109875, *et seq.* (hereinafter "Sherman Law") in the exact same manner as the Purchased Products as described herein.

    3 Musketeers Bar
    Mars Bar
    Milky Way Bar
    Milky Way Bar – Caramel
    Milky Way Bar – Midnight
    Milky Way Bar – Unwrapped
    Snickers Bar – Almond
    Snickers Bar – Peanut Butter
    Snickers Bar – Dark Chocolate
    Twix Cookie Bar – Caramel (**PGPR**)
    Twix Cookie Bar – Peanut Butter
    M&M Chocolate Candy – Peanut
    M&M Chocolate Candy – Peanut Butter
    M&M Chocolate Candy – Pretzel
    M&M Chocolate Candy – Dark Mint
    M&M Chocolate Candy – Raspberry
    M&M Chocolate Candy – Dark Chocolate
    M&M Chocolate Candy – Dark Chocolate w/ Peanuts
    M&M Bar (**PGPR**)
    Dove Bar - Silky Smooth Milk Chocolate
    Dove Bar - Silky Smooth Almond Dark Chocolate (**F**)
    Dove Bar - Silky Smooth Almond Milk Chocolate
    Dove Bar - Silky Smooth Cookies and Crème (**PGPR**)
    Dove Bar - Silky Smooth Mint and Dark Chocolate Swirl (**PGPR**)
    Dove Bar - Silky Smooth White & Milk Chocolate Swirl (**PGPR**)
    Dove Bar - Silky Smooth Raspberry & Dark Chocolate Swirl (**PGPR**)
    Dove Bar - Silky Smooth Peanut Butter (**PGPR**)
    Dove Bar - Sugar Free Silky Smooth Peanut Butter Crème Chocolate (**PGPR**)
    Dove Bar - Sugar Free Silky Smooth Chocolate Crème Dark Chocolate (**PGPR**)
    Dove Bar - Sugar Free Silky Smooth Raspberry Crème Dark Chocolates (**PGPR**)
    Dove Bar - Dark Chocolate, Roasted Almond (**PGPR**)
    Dove Bar - Dark Chocolate, Raspberry & Dark Chocolate Swirl (**PGPR**)
    Dove Promise Bar - Silky Smooth Milk Chocolate
    Dove Promise Bar - Silky Smooth Dark Chocolate (**F**)
    Dove Promise Bar - Silky Smooth Almond Dark Chocolate (**F**)
    Dove Promise Bar - Silky Smooth Almond Milk Chocolate

Dove Promise Bar - Silky Smooth Cookies and Crème
Dove Promise Bar - Silky Smooth Mint and Dark Chocolate Swirl
Dove Promise Bar - Silky Smooth Peanut Butter Milk Chocolate
Dove Promise Bar - Silky Smooth Caramel
Dove Promise Bar - Silky Smooth Raspberry & Dark Chocolate Swirl
Dove Specialties - Roasted Almonds covered in Silky Smooth Milk Chocolate
Dove Specialties - Roasted Almonds covered in Silky Smooth Dark Chocolate **(F)**
Dove Specialties - Raisons and Peanuts covered in Silky Smooth Milk Chocolate

4.      Upon information and belief, each of the forty-four (44) Substantially Similar Products make one or more of the same label representations as the Purchased Products as described herein.  As described in more detail below, all the Substantially Similar Products have an unlawful and misleading calorie related nutrient content claim.  The Substantially Similar Products marked with (F) contain an unlawful and misleading flavanol nutrient content claim and the Substantially Similar Products marked with (PGPR) have an unlawful and misleading common name label.

5.      Plaintiff reserves the right to supplement the list of Substantially Similar Products should evidence is adduced during discovery to show that other Mars products had labels which violate the same provisions of the Sherman Law and have the same label representations as the Purchased Products.

## SUMMARY OF THE CASE

6.      Plaintiff's case has two distinct facets.  First, the "UCL unlawful" part. Plaintiff's first cause of action is brought pursuant to the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL").  Plaintiff alleges that Defendants package and label the Purchased Products in violation of California's Sherman Law which adopts, incorporates – and is identical – to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA").  These violations (which do not require a finding that the labels are "misleading") render the Purchased Products "misbranded" which is no small thing.  Under California law, a food product that is misbranded cannot legally be manufactured, advertised, distributed, held or sold.  Misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless.  Indeed, the sale of misbranded food is a criminal act in California and the FDA even threatens food companies with seizure of misbranded products.   This "misbranding" – standing

alone without any allegations of deception by Defendants or review of or reliance on the labels by Plaintiff – give rise to Plaintiff's first cause of action under the UCL.  To state a claim under the unlawful prong, Plaintiff need only allege that she would not have purchased the product had she known it was unlawful, illegal and misbranded, because buying such a product would result in owning and possessing a product that was illegal to own or possess.

7.     Second, the "fraudulent" part. Plaintiff alleges that the illegal statements contained on the labels of the Purchased Products – aside from being unlawful under the Sherman Law – are also misleading, deceptive, unfair and fraudulent.  Plaintiff describes these labels and how they are misleading.  Plaintiff alleges that prior to purchase she reviewed the illegal statements on the labels on the Purchased Products, reasonably relied in substantial part on the labels, and was thereby deceived, in deciding to purchase these products.  Had Plaintiff known the truth about the products she would not have purchased them.

8.     Plaintiff did not know, and had no reason to know, that the Defendants' Purchased Products were misbranded under the Sherman Law and bore food labeling claims that failed to meet the requirements to make those food labeling claims. Similarly, Plaintiff did not know, and had no reason to know, that Defendants' Purchased Products were false and misleading.

**BACKGROUND**

9.     Identical California and federal laws require truthful, accurate information on the labels of packaged foods. This case is about companies selling misbranded food to consumers. The law, however, is clear: misbranded food cannot legally be sold, possessed, has no economic value and is legally worthless. Purchasers of misbranded food are entitled to a refund of their purchase price or other relief or compensation as determined by the Court. Plaintiff and members of the class that purchased these products paid an unwarranted premium for these products.

10.     Identical federal and California laws regulate the content of labels on packaged food.  The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by the California legislature in the Sherman Law.  Under FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or in its labeling.  21 U.S.C. § 343(a).

11.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any one representation in the labeling is misleading, then the entire food is misbranded, nor can any other statement in the labeling cure a misleading statement.  "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951).  Under the FDCA, it is not necessary to prove that anyone was actually misled.

12.     If a manufacturer is going to make a claim on a food label or on its website, which can be an extension of the label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled and that the labels are truthful, accurate, and backed by scientific evidence.  As described more fully below, Defendants have sold products that are misbranded, illegal to possess and are worthless because (i) the labels violate the Sherman Law and were sold by Defendants and (ii) Defendants made and continue to make false, misleading and deceptive claims on the labels of their products.

13.     Mars Chocolate North America, LLC is one of the leading producers of chocolate candy and other types of confectionery.  Mars, Inc. is the parent company of Mars Chocolate North America, LLC. Defendants' Purchased Products are sold to consumers through grocery and other retail stores throughout California and throughout the U.S.

14.     Defendants recognize that health claims drive sales, and actively promote the health benefits of their products. Defendants have promoted the health and nutritional profiles of their products by trying to highlight various purported attributes of their products such as to highlight health and nutritional claims of a suspect nature. Defendants have run afoul of California and federal regulations that prohibit companies from touting supposedly positive nutritional aspects of their products while concealing or failing to disclose that those products contain disqualifying nutrients at levels the state and federal regulators have concluded raise the risk of a diet-related disease or health-related condition.

15.     In recent years, responding to consumer demand for healthy foods has become a

1    central part of Defendants' business models and marketing strategies, even though Defendants'

2    Purchased Products are various forms of candy and confectionery that are not healthy or low-

3    calorie as a matter of law.

4        16.    Defendants have realized that, based on the public's concern about health, obesity

5    and interest in lower calorie and natural foods, there is a financial benefit to be derived in selling

6    products claiming to be healthy. Accordingly, Defendants have labeled many of their candy and

7    confectionery products to emphasize these qualities even though such claims are in violation of

8    California and federal food labeling laws.

9        17.    Defendants have pursued a strategy based on their assessment that nutritional

10   awareness and the desire for improved health and wellness will increasingly drive consumer

11   choice. Pursuant to this strategy, Defendants decided that they would renovate products for

12   nutrition and health considerations and would seek to inform consumers about available healthy

13   and nutritious options in using their products.

14       18.    In pursuing such a strategy, Defendants (a) decided their success and profitability

15   was dependent on their ability to satisfy emerging consumer demand for healthy, nutritious and

16   lower calorie foods and (b) were prepared to make health and nutrition arguments on behalf of

17   "junk foods" like chocolate candy when in fact such claims were not true and, in fact, were

18   unlawful.

19       19.    For example, according to Mars Incorporated, Mars is one of the world's leading

20   providers of food for people and pets and, as such, it has a:

21       responsibility to help our consumers and the pets they love lead healthy lives. We
         are committed to making sure the products we offer, and the ingredients they
22       contain, can fit into a balanced diet - whether whole grain rice from UNCLE
         BEN'S® or a delicious Mars chocolate bar….Each of our business segments
23       focuses on three areas: information, renovation and innovation.[1]

24       20.    Defendants' key to achieving the goals of their health and nutrition strategy is to

25   convince consumers that they can use Defendants' chocolate candy as part of a healthy and

26   enjoyable diet. Recognizing that the success of this strategy was dependent on repositioning their

27   _____

28   [1] http://www.mars.com/global/about-mars/mars-pia/health-and-nutrition/health-and-nutrition-introduction.aspx

CLASS ACTION COMPLAINT                                                                    6

chocolate candy as healthy, nutritious and lower calorie, Defendants made and are making false and deceptive claims in violation of federal and state laws that govern the types of representations that can be made on food labels.

21.     Plaintiff brings this action under California law, which is identical to federal law, for a number of Defendants' food labeling practices which are both (i) unlawful and (ii) deceptive and misleading to consumers. These unlawful practices include:

> A.     Making unlawful nutrient content claims on the labels of food products that are false and fail to meet the minimum nutritional requirements legally required for the nutrient content claims being made;
>
> B.     Making false calorie related nutrient content claims; and
>
> C.     Failing to utilize the common or usual names of ingredients on their product labels.

## PARTIES

22.     Plaintiff, Phyllis Gustavson, is a resident of Campbell, California who purchased more than $25 worth of Defendants' Purchased Products in California during the Class Period.

23.     Defendant Mars Chocolate North America, LLC is a Delaware LLC with its headquarters in Hackettstown, New Jersey.  Mars Chocolate North America, LLC is registered to do business and does business in California.

24.     Defendant Mars, Inc. is a Delaware corporation with its headquarters in McLean, Virginia. Mars, Inc. is registered to do business and does business in California.

25.     Defendants are leading producers of retail food products, including chocolate candy and other confectionery. Defendants sell their Purchased Products to consumers through grocery and other retail stores throughout California. They also promote their products throughout California through their websites.

26.     California law applies to all claims set forth in this Class Action Complaint because Plaintiff lives in California and purchased the Purchased Products in California. Accordingly, California has significant contacts and/or a significant aggregation of contacts with the claims asserted by Plaintiff and all Class members.

**JURISDICTION, VENUE AND EQUITABLE TOLLING**

27.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendants; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

28.     The Court has jurisdiction over the California claims alleged herein pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy under Article III of the United States Constitution.

29.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

30.     The Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Class Action Complaint occurred in California, Defendants are authorized to do business in California, have sufficient minimum contacts with California, and otherwise intentionally avail themselves of the markets in California through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

31.     Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because the Court has personal jurisdiction over Defendants, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

32.     Plaintiff originally filed this case against Defendants on April 13, 2012. All claims alleged herein have been tolled due to the original filing and the claims in this case relate back to the filing of the original complaint on April 13, 2012.

**FACTUAL ALLEGATIONS**

A.     **Identical California and Federal Laws Regulate Food Labeling**

33.     Food manufacturers are required to comply with federal and state laws and regulations that govern the labeling of food products. First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

34. Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." California Health & Safety Code § 110100.

35. In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. For example, food products are misbranded under California Health & Safety Code § 110660 if their labeling is false and misleading in one or more particulars; are misbranded under California Health & Safety Code § 110665 if their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if their labeling fails to conform with the requirements for nutrient content and claims set forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110705 if words, statements and other information required by the Sherman Law to appear on their labeling are either missing or not sufficiently conspicuous; and are misbranded under California Health & Safety Code § 110735 if they are represented as having special dietary uses but fail to bear labeling that adequately informs consumers of their value for that use.

## B. FDA Enforcement History

36. In recent years, the FDA has become increasingly concerned that food manufacturers have been disregarding food labeling regulations. To address this concern, the FDA elected to take steps to inform the food industry of its concerns and to place the industry on notice that food labeling compliance was an area of enforcement priority.

37. In October 2009, the FDA issued a *Guidance for Industry: Letter Regarding Point of Purchase Food Labeling*, ("FOP Guidance") to address its concerns about front of package labels. The 2009 FOP Guidance advised the food industry:

> FDA's research has found that with FOP labeling, people are less likely to check the Nutrition Facts label on the information panel of foods (usually, the back or side of the package). It is thus essential that both the criteria and symbols used in

front-of-package and shelf-labeling systems be nutritionally sound, well-designed to help consumers make informed and healthy food choices, and not be false or misleading. The agency is currently analyzing FOP labels that appear to be misleading. The agency is also looking for symbols that either expressly or by implication are nutrient content claims. We are assessing the criteria established by food manufacturers for such symbols and comparing them to our regulatory criteria.

It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies. Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that does not comply with the regulatory criteria for the claim as defined in Title 21 Code of Federal Regulations (C.F.R.) 101.13 and Subpart D of Part 101 is misbranded. We will consider enforcement actions against clear violations of these established labeling requirements. . .

… Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP labeling systems and their effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are explicit or implied nutrient content claims and that are not consistent with current nutrient content claim requirements. FDA will also proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading.

38.     The 2009 FOP Guidance recommended that "manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA law and regulations" and specifically advised the food industry that it would "proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading."

39.     Despite the issuance of the 2009 FOP Guidance, Defendants did not remove the unlawful and misleading food labeling claims from their Purchased Products.

40.     On March 3, 2010, the FDA issued an "*Open Letter to Industry from [FDA Commissioner] Dr. Hamburg*" ("Open Letter"). The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter stated:

In the early 1990s, the Food and Drug Administration (FDA) and the food industry worked together to create a uniform national system of nutrition labeling, which includes the now-iconic Nutrition Facts panel on most food packages.  Our citizens appreciate that effort, and many use this nutrition information to make food choices.  Today, ready access to reliable information about the calorie and

nutrient content of food is even more important, given the prevalence of obesity and diet-related diseases in the United States.  This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.

With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs.  The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling. The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections . . . .

As we move forward in those areas, I must note, however, that there is one area in which more progress is needed.  As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.

At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations.  As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990.  Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace.  While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices . . For example:

- Nutrient content claims that FDA has authorized for use on foods for adults are not permitted on foods for children under two.  Such claims are highly inappropriate when they appear on food for infants and toddlers because it is well known that the nutritional needs of the very young are different than those of adults.

- Claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat, and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel.

- Products that claim to treat or mitigate disease are considered to be drugs and must meet the regulatory requirements for drugs, including the requirement to prove that the product is safe and effective for its intended use.

- Misleading "healthy" claims continue to appear on foods that do not meet the long- and well-established definition for use of that term.

- Juice products that mislead consumers into believing they consist entirely of a single juice are still on the market.  Despite numerous admonitions from FDA over the years, we continue to see juice blends being inaccurately labeled as single-juice products.

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole.  In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products.  That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.
I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling.  I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

41.     Notwithstanding the Open Letter, Defendants have continued to utilize unlawful food labeling claims despite the express guidance of the FDA in the Open Letter.

42.     In addition to its guidance to industry, the FDA has sent warning letters to the industry, including many of Defendants' peer food manufacturers, for the same types of unlawful nutrient content claims described above.

43.     In these letters dealing with unlawful nutrient content claims, the FDA indicated that, as a result of the same type of claims utilized by the Defendants, products were in "violation of the Federal Food, Drug, and Cosmetic Act … and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 C.F.R. § 101)" and "misbranded within the meaning of section 403(r)(1)(A) because the product label bears a nutrient content claim but does not meet the requirements to make the claim."   These warning letters were not isolated as the FDA has issued numerous warning letters to other companies for the same type of food labeling claims at issue in this case; the same being released as public records discoverable and downloadable from the Internet.

44.     The FDA stated that the agency not only expected companies that received warning letters to correct their labeling practices but also anticipated that other firms would

examine their food labels to ensure that they are in full compliance with food labeling requirements and make changes where necessary. Defendants did not change the labels on their Purchased Products despite that Defendants knew or should have known of these warning letters to other companies for the same type of violations that Defendants commit with their labels on the products subject to this litigation.

45.     Defendants have turned a blind eye to the FDA's Guidance for Industry, A Food Labeling Guide, which details the FDA's guidance on how to make food labeling claims. Defendants continue to utilize unlawful claims on the labels of its Purchased Products.  Despite all of the available warnings and detailed instructions, Defendants' Purchased Products continue to run afoul of FDA guidance as well as federal and California law.

46.     Despite the FDA's numerous warnings to industry, Defendants have continued to sell products bearing unlawful food labeling claims without meeting the requirements to make them.

47.     Plaintiff did not know, and had no reason to know, that Defendants' Purchased Products were misbranded and bore unlawful food labeling claims that failed to meet the requirements to make such claims.  Similarly, Plaintiff did not, and had no reason to know, that Defendants' Purchased Products were misbranded because the package labeling on the products purchased by Plaintiff were misleading and false.

**OVERVIEW OF APPLICABLE SHERMAN LAW VIOLATIONS**

**A.     California and Federal Law Regulate Unlawful Nutrient Content Claims**

48.     Pursuant to Section 403 of the FDCA, a claim that characterizes the level of a nutrient in a food is a "nutrient content claim" that must be made in accordance with the regulations that authorize the use of such claims.  21 U.S.C. § 343(r)(1)(A).  California expressly adopted the requirements of 21 U.S.C. § 343(r) in § 110670 of the Sherman Law.

49.     Nutrient content claims are claims about specific nutrients contained in a product. They are typically made on the front of packaging in a font large enough to be read by the average consumer.  Because consumers including the Plaintiff rely upon these claims when making purchasing decisions, the regulations govern what claims can be made in order to prevent

misleading claims.

50. Section 403(r)(1)(A) of the FDCA governs the use of expressed and implied nutrient content claims on labels of food products that are intended for sale for human consumption. 21 C.F.R. § 101.13.

51. 21 C.F.R. § 101.13 provides the general requirements for nutrient content claims, which California has expressly adopted in California Health & Safety Code § 110100. Among other requirements, 21 C.F.R. § 101.13 requires that manufacturers include certain disclosures when a nutrient claim is made and, at the same time, the product contains certain levels of unhealthy ingredients, such as fat and sodium. It also sets forth the manner in which that disclosure must be made, as follows:

> (4)(i) The disclosure statement "See nutrition information for ___ content" shall be in easily legible boldface print or type, in distinct contrast to other printed or graphic matter, and in a size no less than that required by §101.105(i) for the net quantity of contents statement, except where the size of the claim is less than two times the required size of the net quantity of contents statement, in which case the disclosure statement shall be no less than one-half the size of the claim but no smaller than one-sixteenth of an inch, unless the package complies with §101.2(c)(2), in which case the disclosure statement may be in type of not less than one thirty-second of an inch.
>
> (ii) The disclosure statement shall be immediately adjacent to the nutrient content claim and may have no intervening material other than, if applicable, other information in the statement of identity or any other information that is required to be presented with the claim under this section (e.g., see paragraph (j)(2) of this section) or under a regulation in subpart D of this part (e.g., see §§101.54 and 101.62). If the nutrient content claim appears on more than one panel of the label, the disclosure statement shall be adjacent to the claim on each panel except for the panel that bears the nutrition information where it may be omitted.

52. An "expressed nutrient content claim" is defined as any direct statement about the level (or range) of a nutrient in the food (*e.g.*, "low sodium" or "contains 100 calories"). *See* 21 C.F.R. § 101.13(b)(1).

53. An "implied nutrient content claim" is defined as any claim that: (i) describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (*e.g.*, "high in oat bran"); or (ii) suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (*e.g.*, "healthy, contains 3 grams (g) of fat"). 21

1    C.F.R. § 101.13(b)(2)(i-ii).

2        54.    The California and federal nutrient content claims regulations authorize the use of

3    a limited number of defined nutrient content claims. In addition to authorizing the use of only a

4    limited set of defined nutrient content terms on food labels, these regulations authorize the use of

5    only certain synonyms for these defined terms. If a nutrient content claim or its synonym is not

6    included in the food labeling regulations it cannot be used on a label. Only those claims, or their

7    synonyms, that are specifically defined in the regulations may be used. All other claims are

8    prohibited. 21 C.F.R. § 101.13(b).

9        55.    Only approved nutrient content claims will be permitted on the food label, and all

10   other nutrient content claims will misbrand a food. It is thus clear which types of claims are

11   prohibited and which are permitted. Manufacturers are on notice that the use of an unapproved

12   nutrient content claim is prohibited conduct. 58 FR 2302. In addition, 21 U.S.C. § 343(r)(2)

13   prohibits using unauthorized undefined terms and declares foods that do so to be misbranded.

14       56.    Similarly, the regulations specify absolute and comparative levels at which foods

15   qualify to make these claims for particular nutrients (*e.g.*, low fat . . . more vitamin C) and list

16   synonyms that may be used in lieu of the defined terms. Certain implied nutrient content claims

17   (*e.g.*, healthy) also are defined. The daily values ("DVs") for nutrients that the FDA has

18   established for nutrition labeling purposes have application for nutrient content claims, as well.

19   Claims are defined under current regulations for use with nutrients having established DVs;

20   moreover, relative claims are defined in terms of a difference in the percent DV of a nutrient

21   provided by one food as compared to another. *See e.g.*, 21 C.F.R. §§ 101.13 and 101.54.

22   **B.    The Defendants Make Unlawful and Misleading Flavanol Nutrient Content**
           **Claims**

23

24       57.    The following Purchased Products have unlawful flavanol nutrient content claims

25   on the packages:  Dove Bar – Dark Chocolate, 3.3 oz.

26       58.    In order to appeal to consumer preferences, Defendants have repeatedly made false

27   and unlawful nutrient content claims for flavanols that fail to utilize one of the limited defined

28   terms. These nutrient content claims are unlawful because they fail to comply with the nutrient

content claim provisions in violation of 21 C.F.R. §§ 101.13 and 101.54, which have been incorporated in California's Sherman Law. To the extent that the terms used by the Defendants to describe nutrients like flavanols are deemed to be a synonym for a defined term like "contain" the claim would still be unlawful because, as these flavanols do not have established daily values, they cannot serve as the basis for a term that has a minimum daily value threshold as the defined terms at issue here do.

59.     Defendants' claims concerning unnamed flavanol nutrients are false are unlawful because they fail to comply with the nutrient content claim provisions in violation of 21 C.F.R. §§ 101.13 and 101.54, which have been incorporated in California's Sherman Law. They are false because Defendants' use of a defined term is in effect a claim met the minimum nutritional requirements for the use of that term when they have not.

60.     Claims that products like Defendants Dove Bar - Dark Chocolate, 3.3 oz. are "*a natural source of cocoa flavanols*" are unlawful.  They are also false because the terms have defined minimum nutritional thresholds so that, for example, a claim that a product "contains" a nutrient is a claim that the product has at least 10% of the daily value of that nutrient.

61.     By using defined terms improperly, Defendants were, in effect, falsely asserting that the products met the minimum nutritional thresholds for the claims in question which its products failed to qualify for. By using undefined terms such as "source" and "found" Defendants were, in effect, falsely asserting that its products met at least the lowest minimum threshold for any nutrient content claim which would have been 10% of the daily value of the nutrient at issue. Such a threshold represents the lowest level that a nutrient can be present in a food before it becomes deceptive and misleading to highlight its presence in a nutrient content claim.

62.     FDA enforcement actions targeting identical or similar claims to those made by Defendants have made clear the unlawfulness of such claims. For example, on March 24, 2011, the FDA sent Jonathan Sprouts, Inc. a warning letter where it specifically targeted a "source" type claim like the one used on the Defendants' chocolate products. In that letter the FDA stated:

> Your Organic Clover Sprouts product label bears the claim "Phytoestrogen Source [.]" Your webpage entitled "Sprouts, The Miracle Food! - Rich in Vitamins, Minerals and Phytochemicals" bears the claim "Alfalfa sprouts are one

of our finest food sources of . . . saponin." These claims are nutrient content claims subject to section 403(r)(1)(A) of the Act because they characterize the level of nutrients of a type required to be in nutrition labeling (phytoestrogen and saponin) in your products by use of the term "source." Under section 403(r)(2)(A) of the Act, nutrient content claims may be made only if the characterization of the level made in the claim uses terms which are defined by regulation. However, FDA has not defined the characterization "source" by regulation. Therefore, this characterization may not be used in nutrient content claims.

63.     It is thus clear that a "source" claim like the one utilized on the label Defendants' Dove Bar - Dark Chocolate, 3.3 oz. is unlawful because the "FDA has not defined the characterization 'source' by regulation" and thus such a "characterization may not be used in nutrient content claims." Such a claim characterizes the fact the cocoa or chocolate contain unnamed flavanols at some undefined level. This type of claims is false because it falsely implies that the levels of nutrients in the food are capable of satisfying the minimum nutritional threshold established by regulation.

64.     Similarly, a claim that a nutrient is "found" in cocoa or chocolate is improper because it is either an undefined characterization that a nutrient is found in a food at some undefined level or because it is a synonym for a defined term like "contains" as there is no difference in meaning between the statement "chocolate contains flavanols" and the statement "flavanols are found in chocolate." Both characterize the fact the chocolate contains flavanols at some undefined level. The types of misrepresentations made above would be considered by a reasonable consumer like the Plaintiff when deciding to purchase the products.

65.     Claims that certain of Defendants' chocolate products are a source of "*cocoa flavanols*" or that the Defendants COOAPRO process "*helps retain much of the naturally occurring cocoa flavanols*" (as stated on the labels of Dove Bar – Dark Chocolate) are unlawful and false because flavanols do not have an RDI and therefore these Defendants' chocolate products do not meet the minimum nutrient level threshold to make such a claim which is 10 percent or more of the RDI or the DRV per reference amount customarily consumed.

66.     Claims that certain of Defendants' chocolate products contain or are made with an ingredient that is known to contain a particular nutrient, or is prepared in a way that affects the content of a particular nutrient in the food, can only be made if it is a "good source" of the

1    nutrient that is associated with the ingredient or type of preparation.  Thus, Defendants'

2    statements on chocolate products that the products are a "source" of "flavanols" trigger a "good

3    source" (10 percent or more of the RDI or the DRV per reference amount customarily consumed)

4    which Defendants cannot demonstrate for flavanols.  Similarly, Defendants' label claim that its

5    cocoa products are a" [n]atural source of cocoa flavanols" trigger a "good source" requirement

6    (10 percent or more of the RDI or the DRV per reference amount customarily consumed) for

7    "flavanols" which cannot be established since there is no RDA or DRV for flavanols.

8         67.    The nutrient content claims regulations discussed above are intended to ensure that

9    consumers are not misled as to the actual or relative levels of nutrients in food products.

10        68.    Plaintiff relied on Defendants' nutrient content claims when making her purchase

11   decisions and was misled because she erroneously believed the implicit misrepresentation that the

12   Dove Bar - Dark Chocolate, 3.3 oz. she was purchasing met the minimum nutritional threshold to

13   make such claims. Plaintiff would not have purchased this product had she known that this

14   product did not in fact satisfy such minimum nutritional requirements with regard to flavanols

15   and consequently that the product was not as healthy as Defendants advertised.

16        69.    For these reasons, Defendants' nutrient content claims at issue in this Class Action

17   Complaint are false and misleading and in violation of 21 C.F.R. § 101.13 and California law, and

18   the products at issue are misbranded as a matter of law. Defendants have violated these

19   referenced regulations. Therefore, Defendants' Dove Bar - Dark Chocolate, 3.3 oz. and the

20   products listed herein that are substantially similar are misbranded as a matter of federal and

21   California law and cannot be sold or held because they are legally worthless.

22        70.    Plaintiff was thus misled by the Defendants' unlawful labeling practices and

23   actions into purchasing products she would not have otherwise purchased had she known the truth

24   about those products.

25        71.    Defendants' claims in this respect are false and misleading and the products are in

26   this respect misbranded under identical federal and California laws, misbranded products cannot

27   be legally sold and are legally worthless. Plaintiff and members of the Class who purchased these

28   products paid an unwarranted premium for these products.

C.      **Defendants Make Unlawful and Misleading Calorie Related Nutrient Content Claims**

72.     All five of the Purchased Products have an unlawful calorie related nutrient content claim on their labels which was reviewed and relied upon by Plaintiff.  Similarly, all the Substantially Similar Products also have an unlawful calorie related nutrient content claim on the labels of the products.

73.     To appeal to consumer preferences, Defendants have repeatedly made unlawful calorie nutrient content claims on the packages of both the Purchased Products and Substantially Similar Products as described above. These claims are unlawful because they are false and misleading and fail to conform to the mandated requirements for nutrient content claims.

74.     In addition, the Defendants make these claims on products containing disqualifying nutrient levels that preclude the making of even truthful and accurate nutrient claims without the required disclaimer or warning.

75.     In particular, Defendants have placed an unlawful calorie related nutrition content claim on the front of the packages of these products.  This calorie nutrient content claim purports to utilize the form of one of the four "Basic Icons" from the Nutrition Keys (Facts Up Front) voluntary labeling program developed by the Grocery Manufacturers Association ("GMA") and Food Marketing Institute ("FMI"). However, as detailed below, the icon used by Defendants does not comply with (1) California and federal labeling requirements; (2) guidance from the FDA about the proper use of the four "Basic Icons" from the Nutrition Keys (Facts Up Front) voluntary labeling program; or (3) the provisions of the Nutrition Keys (Facts Up Front) voluntary labeling program.

76.     The Nutrition Keys (Facts Up Front) voluntary labeling program developed by the GMA and FMI utilizes four "Basic Icons" that are designed to be presented together (along with several possible optional icons) to give consumers a clear picture of the nutritional value of a serving of the particular foods in question. The Nutrition Keys (Facts Up Front) voluntary labeling program is designed so that shoppers can quickly compare the relative nutritional value of food items that are all using the same yardsticks to determine nutritional value.

77.     Any utility of the four "Basic Icons" from the Nutrition Keys (Facts Up Front) voluntary labeling program evaporates when a food manufacturer fails to follow the same rules as everyone else in the program and games the system making its products appear healthier and preferable to competing products when in fact they are not. The four "Basic Icons" from the Nutrition Keys (Facts Up Front) voluntary labeling program are designed so that consumers can make quick purchasing decision without studying packaging and thus it is particularly inappropriate and misleading for a manufacturer to use tricks to take advantage of consumers who seek to avail themselves of the information that the Nutrition Keys (Facts Up Front) voluntary labeling program is supposed to supply.

78.     Defendants failed to adhere to the guidelines of the Nutrition Keys (Facts Up Front) voluntary labeling program by utilizing smaller reference sizes for their icons than the serving size mandated by the FDA that the guidelines required. This understated the calories (and any other referenced nutrients) in Defendants' products listed herein. In addition, while the Nutrition Keys (Facts Up Front) voluntary labeling program made clear that there was no DV for calories or sugars and thus none should be used in the Basic Icons, Defendants utilized an unauthorized DV for calories that would overstate calorific requirements for much of the population including women and children and other consumers with lower calorific requirements.[2] This is made clear by the nutritional calculator included supplied by the Nutrition Keys (Facts Up Front) voluntary labeling program. It is also confirmed by FDA materials that calculate caloric requirements.

79.     At the request of the GMA and the FMI the FDA provided guidance about the Nutrition Keys (Facts Up Front) voluntary labeling program and the icons that it utilized.  In its guidance the FDA rejected the view that the icons were not nutrient content claims and expressly stated that the:

> FDA views the Nutrition Keys Basic Icons (calories, saturated fat, sodium and total sugar content) and Optional Icons as nutrient content claims subject to all the requirements of the FDCA and the Agency's regulations.

---

[2] See http://www.gmaonline.org/news-events/newsroom/food-and-beverage-industry-launches-nutrition-keys-front-of-pack-nutrition-/

*Id.* As such, when a manufacturer utilizes such icons on the product labels of products containing a disqualifying nutrient level, it must comply with the requirements of 21 C.F.R. § 101.13(h) and include a disclosure statement designed to inform consumers that the product contains a nutrient at level the FDA believes poses a risk of a diet related disease or health condition. Such disclosure is designed to prohibit manufacturers from falsely implying their products are healthier than they actually are by only highlighting positive attributes while concealing negative aspects.

80.     The FDA made clear that:

> standardized, non-selective presentation of the four Basic Icons on a company's product line would alleviate some of FDAs concern regarding the potential for product labeling to mislead consumers by presenting only "good news" about nutrient content on the front of the package, which is the concern that the regulations governing nutrient content claims were intended to address. We also recognize that the standardized, non-selective presentation of the four Basic Icons on a company's entire product line, if widely adopted by the food industry in a uniform manner, may contribute to FDA's public health goals by fostering awareness of the nutrient content of foods in the marketplace and assisting consumers in making quick, informed, and healthy food choices.

*Id.* Notwithstanding this position, Defendants resorted to selective non-standard presentation of "good news" about nutrient content on the front of the package, which is the concern that the regulations governing nutrient content claims were intended to address.  Moreover, Defendants did not utilize the four Basic Icons but rather a bastardized version of the calorie icon (that used smaller reference sizes than the required serving size and an unauthorized DV for calories) that hindered awareness of the nutrient content of foods in the marketplace and interfered with consumers being able to make quick, informed, and healthy food choices. In doing so Defendants failed to follow the FDA's guidance that while it would not enforce the regulations quoted above and require the disclosure of disqualifying nutrient if ALL FOUR of the nutrients covered by the Basic Icons were presented together on the front of the package, it would continue to require such disclosures if less than all four were repeated on the front. In doing so the FDA stated:

> As of the date of this letter, FDA intends to exercise enforcement discretion as outlined in the numbered points above with respect to firms that participate in and comply with the terms of the Nutrition Keys program, including use of the four Basic Icons on virtually all eligible products. We believe that this will facilitate

participation in a positive effort to provide consumers more ready access to information about the nutrient content of packaged foods, without compromising consumer protection. A key consideration in our decision is that the disclosure statement referring consumers to the Nutrition Facts panel of the food label will continue to be required on products that bear Optional Icons and that exceed the disclosure trigger levels of total fat, saturated fat, cholesterol, or sodium established in 21 C.F.R. 101.13(h). In addition, all other nutrient content claims used on the food label or in other labeling will be expected to comply with the relevant regulations on the use of such claims.

*Id.* The FDA made clear however that when a manufacturer like Defendants acts improperly the "FDA does not intend to exercise enforcement discretion with respect to companies that misuse the Nutrition Keys labeling system in a manner that misleads consumers or otherwise violates the FDCA." *Id.*

81.     As stated above, the nutrient content claims are unlawful because among other reasons, they have failed to include disclosure statements for nutrient content claims required by law that are designed to inform consumers of the inherently unhealthy nature of those products in violation of 21 C.F.R. § 101.13(h), which has been incorporated in California's Sherman Law.

82.     21 C.F.R. § 101.13 (h)(l) provides that:

If a food … contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less … per 50 g … then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for content" with the blank filled in with the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content."

83.     It should be noted that the disclosure required by 21 C.F.R. § 101.13 (h) that is at issue in this case is completely separate and different from the disclaimer discussed in 21 C.F.R. § 101.13 (i). The disclosure required by 21 C.F.R. § 101.13 (h) is designed to ensure consumers are given completely nutritional information and that manufacturers do not tout positive nutritional aspects while concealing negative aspects like disqualifying nutrient levels. In contrast, the disclaimer described in 21 C.F.R. § 101.13(i) is designed to ensure that there is adequate disclosure when claims implicitly characterize the level of the nutrient in the food but are not consistent with such a definition.  21 C.F.R. § 101.13(h) mandates the disclosure of other disqualifying nutrients while 21 C.F.R. § 101.13(i) mandates that particular nutrient claims that

implicitly characterize levels of nutrients either be consistent with regulatory definitions for those nutrients or disclose that fact. There are entirely separate provisions with entirely different requirements.

84.     Defendants repeatedly violated 21 C.F.R. § 101.13(h). Defendants' Purchased Products' packaging prominently makes claims about the products percentage of the Daily Value for calories despite disqualifying levels of total fat and saturated that exceed the disclosure threshold stated in 21 C.F.R. § 101.13(h).[3]  For example, the principal display panel of Defendants' M&M Chocolate Candy packages unlawfully makes such a nutrient content claim despite containing more than 4 grams of saturated fat per serving size.  This level of saturated fat bars the making of a nutrient content claim without a disclosure statement.

85.     Pursuant to 21 C.F.R. § 101.13(h), Defendants are prohibited from making the unqualified nutrient claims of on its food products if its products contain disqualifying levels of fat, saturated fat, cholesterol, or sodium, unless the product also displays a disclosure statement that informs consumers of the product's fat, saturated fat and sodium levels.

86.     The FDA made clear in its regulations that (a) repeating on the front of a package the levels of any of the four (4) nutrients required in the nutritional information box on the back of the package is a nutrient content claim; and (b) such nutrient content claims must comply with all requirements of such claims, including disclaimers for high levels of saturated fat, fat or sodium or other disqualifying nutrients.

87.     These regulations are intended to ensure that consumers are not misled to believe that a product that claims, for instance, to have certain nutritional benefits, but actually has other unhealthy fat, saturated fat, cholesterol or sodium levels, is a healthy choice.

---

[3] For a food, except a meal product as defined in §101.13(l) or a main dish product as defined in §101.13(m), these levels are more than 13.0 g of fat, 4.0 g of saturated fat, 60 mg of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less or 2 tablespoons or less, per 50 g.  If a food is a meal product as defined in §101.13(l), these levels are  more than 26 g of fat, 8.0 g of saturated fat, 120 mg of cholesterol, or 960 mg of sodium per labeled serving.  If a food is a main dish product as defined in §101.13(m), these levels are more than 19.5 g of fat, 6.0 g of saturated fat, 90 mg of cholesterol, or 720 mg of sodium per labeled serving.

88.     Nevertheless, Defendants' labels on its Purchased Products make calorie related nutrient content claims without such a disclosure even though these products contain fat, saturated fat, cholesterol, or sodium in excess of the levels that the FDA has concluded increases the risk of a diet-related disease or health related condition.

89.     For example, the (i) Dove Bar - Dark Chocolate Dove bar had disqualifying amounts of fat and saturated fat, (ii) the M&M Chocolate Candy and Twix Cookie Bar had disqualifying amounts of saturated fat, yet all bore the calorie related nutrient content claim without the mandated disclosure. Moreover, Defendants compound this problem by often making their front of package nutrient claims not based on the actual serving size but rather on a per piece or bar or pack basis that represents only a fraction of the levels present in the actual serving size. This is misleading to consumers like Plaintiff. This was true on all Purchased Products.

90.     Based on the fat and saturated fat content of Defendants' Purchased Products, pursuant to federal and California law, Defendants must include a warning statement adjacent to any calorie or other nutrient claim that informs consumers of the high levels of fat, saturated fat, cholesterol or sodium.

91.     No such disclosure statement currently exists on Defendants' Purchased Products. Therefore, they are misbranded as a matter of federal and California law and cannot be sold because they are legally worthless.

92.     In the FDA Guidance to Industry the FDA states (emphasis added):

**Are nutrition designations permitted on food package labels?**

**Answer: FDA considers information that is required or permitted in the Nutrition Facts label that is on the front label or elsewhere on the package outside the Nutrition Facts label to be a Nutrient Content Claim** (NCC). In such cases, the package label must comply with the regulations for nutrient content claims. See the NCC section and Appendices A and B of this document for more information. 21 C.F.R. 101.13(c).[4]

93.     In addition to its guidance to industry, the FDA has sent warning letters to the industry, including many of Defendants' peer food manufacturers, for the same types of unlawful

---

[4] Guidance to Industry, A food labeling Guide, Nutrition Labeling, October, 2009, http://www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinformation/labelingnutrition/ucm064894.htm

nutrient content claims described above.  In these letters the FDA indicated that as a result of the same types of claims utilized by Defendants, products were in "violation of the Federal Food, Drug, and Cosmetic Act … and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 C.F.R. 101)" and "misbranded within the meaning of section 403 because the product label bears a nutrient content claim but does not meet the requirements to make the claim."

94.     The warning letters were not isolated, as the FDA has issued a number of other warning letters to other companies for the same type of unlawful nutrient content claims at issue in this case.

95.     Despite the FDA's numerous warnings to industry, Defendants have continued to sell its Purchased Products bearing unlawful calorie related nutrient content claims without meeting the requirements to make them. These claims also failed to adhere to the guidelines established by the FDA, the GMA and the FMI for Nutrition Keys (Facts Up Front) voluntary labeling program.

96.     Plaintiff saw and relied on Defendants' false calorie related daily value nutrient content claims and based her purchasing decisions in part on such claims. Had Plaintiff been aware that Defendants' calorie related daily value nutrient content claims were false she would not have purchased Defendants' products.

97.     Plaintiff did not know, and had no reason to know, that Defendant's Purchased Products were misbranded, and bore nutrient claims despite failing to meet the requirements to make those nutrient claims. Plaintiff was equally unaware that Defendant's Purchased Products contained one or more nutrients like total fat or saturated fat at levels in the food that, according to the FDA, "may increase the risk of disease or health related condition that is diet related." Plaintiff was equally unaware that Defendants DV claim for calories was not authorized by the FDA or the GMA or the FMI and was not compliant with the guidelines established by the FDA, the GMA and the FMI for Nutrition Keys (Facts Up Front) voluntary labeling program. Plaintiff was also unaware that Defendants were utilizing an icon for calories that improperly understated calories compared to competing products.

98.     Had Plaintiff known these facts, Plaintiff would not have purchased the Purchased Products. Plaintiff and members of the Class who purchased the Purchased Products paid an unwarranted premium for these products.

99.     Defendants' unlawful statements on products of front of package calorie nutrient content claims result in two separate and independent unlawful violations, bringing into effect four separate law violations: one a specific labeling violation and one a violation for the sale of a misbranded product.

100.    When a manufacturer such as Defendants make an unlawful calorie nutrient content claim it violates 21 C.F.R. § 101.13 (and Sherman Law § 110100), Sherman Law § 110670 and Sherman Law § 110705. Thus, it violates the unlawful prong. Such products are misbranded under Sherman Law § 110660, Sherman Law § 110670 and Sherman Law § 110705. Defendants' act of selling a misbranded product violates Sherman Law § 110760.

101.    The sale of a misbranded product results in an independent violation of the unlawful prong that is separate from the labeling violation. The only necessary element of that claim is Defendants' unlawful label, and injury arises from the unlawful sale of an illegal product that is unlawful to sell and unlawful to possess. Although, in this case Plaintiff did rely on the calorie related nutrient content claim, no reliance by the consumer is necessary beyond reliance on the legality of the product. Plaintiff has been deprived of money in an illegal sale and given a worthless illegal product in return. In addition, due to the law's prohibition of possession of such a product, Plaintiff has been unwittingly placed by Defendants' conduct in a legal position that no reasonable consumer would agree to be placed.

102.    21 C.F.R. § 101.13 (h)(l) provides that:

> If a food … contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less … per 50 g … then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for __ content" with the blank filled in with the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content."

103.    21 C.F.R. § 1.21 establishes that failure to disclose material facts is a violation of the disclosure rules and is *per se* "misleading." The fat which Defendants failed to disclose is material.

104.    Defendants repeatedly violated these provisions when they prominently stated front of package calorie nutrient content claims claim on their labels of the Purchased Products without the mandatory disclosure statement.

105.    This Court has found this exact kind of label representation to be misleading.

106.    "A disqualifying level of, say, saturated fat is four grams per 'reference amount customarily consumed.'" 21 C.F.R. § 101.13(h)(1); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010). If this level is exceeded, a food purveyor is prohibited from making an unqualified claim touting the health benefits of another nutrient in the food. *Id.* This is because the Agency has reasoned that the beneficent claim, standing alone, would be misleading." *Id.*

107.    This Court has already held that an improper nutrient claim such as Defendants' calorie claim even if accurate, may be unlawful and misleading. *Wilson v. Frito-Lay North America, Inc.*, 2013 WL 1320468 (N.D. April 1, 2013)(Plaintiffs sufficiently alleged claim that the "0 Grams Trans Fat" statement on bags of potato chips was deceptive because, accompanied by a disclosure of at least one of the ingredients that 21 C.F.R. § 101.13(h)(1) requires to be disclosed, they and other reasonable consumers would think that the statements on the labels make accurate claims about the labeled products' nutritional content when, in fact, they do not; nutrient claim such as; "0 grams Trans Fat," even if accurate, may be unlawful and misleading).

108.    In *Chacanaca*, Judge Seeborg explained:

> The federal regulatory statute provides for this precise scenario: that is, it categorizes as misleading and therefore prohibited even true nutrient content claims if the presence of another "disqualifying" nutrient exceeds and amount established by regulation. The Agency has by regulation imposed "disqualifying" levels for only four nutrients: total fat, saturated fat, cholesterol, and sodium. 21C.F.R. §§ 101.13(h)(1), 101.14(a)(4). It is important to note how disqualifying claims work. A disqualifying level of say, saturated fat is four grams per "reference amount customarily consumed." 21C.F.R. § 101.13 (h)(1). If this level is exceeded, a food purveyor is prohibited from making an unqualified claim touting the health benefits of another nutrient in the food. This is because the Agency has reasoned that the beneficent claim, standing alone, would be misleading.

*Chacanaca*, 752 F. Supp. 2d at 1122 (emphasis in original).

109.    Despite the FDA's numerous warnings to industry, Defendants continued to sell its Purchased Products bearing improper front of package calorie nutrient content claims without meeting the requirements to make these claims.

110.    Due to Defendants misbranding of their Purchased Products, Plaintiff lost money by purchasing unlawful products.

111.    Thus, in this case, where Defendants unlawfully sold products containing an calorie related nutrient content statement and omitting  the mandatory disclosure statement   there is (1) a violation of specific labeling regulations; (2) a plaintiff who relied on that labeling statement; (3) a violation of both the unlawful and misleading prongs due to Plaintiff's reliance; and (4) an independent violation of the unlawful prong due to Defendants' sale of an illegal product that is unlawful to possess.

112.    As to their misleading claim, Plaintiff alleges pursuant to Federal Rule of Civil Procedure 9(b) as follows:

113.    Plaintiff did not know, and had no reason to know, that Defendants' Purchased Products were misbranded, by the front of package calorie nutrient content claims despite failing to meet the requirements to make those nutrient claims. Plaintiff read and relied upon Defendants' front of package front of package calorie nutrient content claims statement, and Plaintiff was thus deceived.  Plaintiff was further unaware that Defendants' food products contained saturated fat and total fat at levels in the food that, according to the FDA, "may increase the risk of disease or health related condition that is diet related."  Because of Defendants' unlawful and misleading front of package calorie nutrient content claims and omitted disclosure statement, Plaintiff was misled to believe that the product was better for her diet by containing no appreciable levels of deleterious nutrients present at actionable levels by the FDA.  Plaintiff was misled to believe the products did not contain saturated fat, fat, cholesterol, sodium, and other negative food attributes at levels that may increase the risk of disease or health related conditions. Defendants' front of package calorie nutrient content claims label claim and omitted disclosure statement led Plaintiff

1    to believe that Defendants' food products were a better and healthier choice than other competing

2    snack products.

3        114.    Defendants' conduct misled Plaintiff because, with Defendants failing to disclose

4    the high saturated fat and other deleterious attributes of its food, Plaintiff was misled into

5    believing Defendants' product to be a healthier choice. Plaintiff is  conscious of the healthiness of

6    the products they purchase, and Defendants' unlawful statements and omitted mandatory

7    disclosures deprived Plaintiff of her  ability to take into account those foods' contributions, or not,

8    to Plaintiff's total dietary composition. Defendants' concealed the deleterious attributes of their

9    food, and Plaintiff was misled and deceived, both by Defendants' statements of the healthy

10    attribute (front of package calorie nutrient content claims) and failure to disclose the deleterious

11    food attributes (fat content over 13g). The health conscious Plaintiff was misled by Defendants'

12    unlawfully prominent display of the ostensible good traits of its product, and unlawful failure to

13    disclose the bad.

14        115.    Plaintiff reasonably relied on this label representation when making her purchase

15    decision and were misled by the front of package calorie nutrient content claims representation at

16    issue here.  Plaintiff would not have purchased Defendants food products had she  known the

17    truth about these products, *i.e.* that the products failed to make better contributions to Plaintiff's

18    diet and that the products contain one or more nutrients like saturated  fat at levels in the food that

19    increased the risk of disease and/or dietary health related conditions.  Plaintiff had other food

20    alternatives that satisfied such standards and Plaintiff also had cheaper alternatives.  Reasonable

21    consumers would have been misled in the same identical manner as Plaintiff.

22        116.    Defendants' unlawful failure to use the mandatory disclosure is actionable.

23    Plaintiff was unlawfully misled to believe that the products were low in saturated fat, by the front

24    of package calorie nutrient content claims statement, and, as a result, they purchased these

25    products. Plaintiff was misled and deceived through the very means and methods the FDA sought

26    to regulate.

27        117.    Plaintiff and the Class would not have purchased Defendants' Purchased Products

28    had they not been misled by Defendants' unlawful calorie related claim and been properly

1    informed by Defendants' of the deleterious attributes of those products, and had they otherwise

2    not have been improperly misled and deceived as stated herein.

3         118.   In addition to concealing the disqualifying nutrient levels present in their products,

4    Defendants have engaged in other unlawful and misleading labeling practices.

5         119.   In particular, Defendants have utilized a front of package calorie related nutrient

6    claim that indicates that the products in question supply a certain percentage of the Daily Value

7    ("DV") of calories.  The Purchased Products all bore such a claim oftentimes in a "logo" listing

8    the calories by smaller piece or packages as opposed to by the larger FDA mandated serving size,

9    This claim is false because just like for sugars and trans fat there is no established DV for calories

10   and food manufacturers are precluded from making such claims unless a DV actually exists. In

11   fact, the exact amount of caloric intake that is appropriate is individualized and on average

12   women such as Plaintiff require less calories per day than men do to either lose or maintain their

13   weight.  So that the DV used by Defendants likely understates the actual percentage for

14   individuals like Plaintiff. It is also misleading because, even if it could be given, it is given on a

15   quantity of the product less than the FDA mandated serving size thus understating the true

16   amount of calories. For example, the front panel of the package of the Snickers Bar purchased by

17   Plaintiff states "80 Calories per piece" and bears a "logo" or "box" stating "Calories 80, 4% DV,

18   per piece." This information is repeated on the back of the package in a brightly colored box that

19   also has the "per piece" amount of total fat, saturated fat, sugars and sodium. As is indicated in

20   the Nutrition Facts the FDA mandated serving size is two (2) pieces, so even if the calorie claim

21   on the front were lawful it would understate the nutrients by 50%. Moreover, the claim is

22   unlawful because the claim on the front of the package does not include the required disclosure of

23   high levels of fat and other unhealthy nutrients.

24        120.   The inclusion of a DV for calories on the label of Defendants Purchased Products

25   is completely false and misleading for the following reason. According to the 2010 U.S. dietary

26   guidelines only a small amount of calories should be derived from fats or sugars even if a

27   midrange 2000 calorie diet is used as the reference point. The guidelines actually list 5 lower

28   caloric diets as reference points (1000, 1200, 1400, 1600 and 1800 calorie diets) recognizing as

the FDA and USDA both do that different people have different caloric requirements and thus there is no single DV for calories. Moreover, the dietary guidelines recommend eliminating sources of added sugar such as candy from the diet entirely. According to these guidelines, "the maximum limit" of calories in a midrange 2000 calorie diet that should be derived from fats and added sugars is 258.  Defendants' Purchased Products contain between 142 and 212 calories from fats and added sugars (using stated calories from fat and 4 calories for each stated gram of sugar. This represents between 55% and 82.2% of the maximum caloric limit that should comprise a 2000 calorie diet. Thus, Defendants fabricated DV for calories grossly overstates the amount of calories from a 2000 calorie diet that should come from candy such as Defendants.'  This is true for each of Defendants' Purchased Products and the Substantially Similar Products.

121.    Thus, Defendants' M&M Chocolate Candy, 1.69 oz. (80 calories from fat,  31 g sugars) has 204 calories from fat and sugars and provides 79.1% of the maximum daily caloric limit and not the 12% DV fabricated by Defendants; Defendants' Twix Cookie Bar, 1.79 oz. (110 calories from fat,  24 g sugars) has 206 calories from fat and sugars and provides 79.8% of the maximum daily caloric limit and not the 13% DV fabricated by Defendants; Defendants' Dove Bar - Dark Chocolate Dove Bar, 3.3 oz. (120 calories from fat,  19 g sugars) has 196 calories from fat and sugars and provides 76% of the maximum daily caloric limit and not the 11% DV fabricated by Defendants; Defendants' Dove Bar - Milk Chocolate, 3.3 oz. (120 calories from fat, 23 g sugars) has 212 calories from fat and sugars and provides 82.2% of the maximum daily caloric limit and not the 12% DV fabricated by Defendants; and Defendants' Snickers Bar, 11.8 oz. (70 calories from fat,  9 g sugars) has 142 calories from fat and sugars and provides 55% of the maximum daily caloric limit and not the 4% DV per piece or 8% per serving fabricated by Defendants.

122.    By placing a fabricated DV for calories that grossly misrepresented and overstated the maximum amount of calories that should come, Defendants misrepresented the healthiness of their candy and made them seem like more a part of a healthy diet than they actually were. Even if a person was to depend on just the amounts of fat and saturated fat that the FDA uses to calculate the daily recommended value percentages for fat and saturated fat to

1  calculate a DV for calories (the FDA has no daily recommended value for sugar or calories),

2  Defendants' fabricated DV for calories would still overstate the amount of calories that should be

3  derived from a product such as Defendants' candy as on each purchased product the percentages

4  for each of these two components both far exceed the percentage represented to be the DV for

5  calories in some cases by more than 3 times the percentage stated as the purported DV for

6  calories.

7          123.    Thus, Defendants' M&M Chocolate Candy, 1.69 oz. (fabricated 12% DV calories;

8  has 14% of the recommended fat and 30% of the recommended saturated fat); Defendants' Twix

9  Cookie Bar, 1.79 oz. (fabricated 13% DV calories; has 18% of the recommended fat and 35% of

10  the recommended saturated fat); Defendants' Dove Bar - Dark Chocolate, 3.3 oz. (fabricated 11%

11  DV calories; has 22% of the recommended fat and 40% of the recommended saturated fat);

12   Defendants' Dove Bar - Milk Chocolate, 3.3 oz. (fabricated 12% DV calories; has 20% of the

13  recommended fat and 40% of the recommended saturated fat); and Defendants' Snickers Bar,

14  11.8 oz. (fabricated 4% DV calories per piece and 8% per serving; has 12% of the recommended

15  fat and 15% of the recommended saturated fat) all overstate the actual amount of calories these

16  products should be allowed to contribute to a person's diet even if a midrange 2000 calorie diet is

17  utilized as the reference point.  Defendants' fabricated DV for calories overstates the relative

18  portion of a 2000 calorie diet that should come from Defendants' candy and makes it falsely

19  appear that pursuant to official guidelines Defendants' candy can feature in a larger portion of a

20  person's diet than it actually should according to government guidelines.  Defendants' fabricated

21  DV for calories was misleading to consumer like the Plaintiff who relied on Defendants'

22  fabricated DV for calories. Moreover, any reasonable consumer would have been misled by

23  Defendants' fabricated DV for calories.

24          124.    The FDA has repeatedly issued warning letters to companies who made such

25  unauthorized DV claims.

26

27

28

### D. Defendants Violate California Law By Failing To Label Their Product Ingredients By Their Common Names

125. The following Purchased Products unlawfully fail to label ingredients by their common name:  Twix Cookie Bar, 1.79 oz.

126. In violation of identical California and federal law, Defendants misrepresented the ingredients in its chocolate products.  The Defendants did this by failing to list these ingredients in the ingredient statements by their common and usual name.

127. Under California law "[a]ny food fabricated from two or more ingredients is misbranded unless it bears a label clearly stating the common or usual name of each ingredient" (California Health & Safety Code § 110725). California's law is identical to federal law on this point.

128. Moreover, California has expressly adopted the federal regulations as it own. Thus California has adopted the requirements of 21 C.F.R. § 101.4 which mandate that the ingredient names listed on product labels be the common or usual name of those ingredients.

129. In its guidance for industry and warning letters to manufacturers, the FDA has repeatedly stated its policy of restricting the ingredient names listed on product labels to their common or usual name, as provided in 21 C.F.R. § 101.4(a)(1).

130. An ingredient's common or usual name is the name established by common usage or regulation, as provided in 21 C.F.R. § 102.5(d) which has been adopted by the State of California.

131. The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, as provided in 21 C.F.R. § 102.5(a).

132. The purpose of these laws and regulations is to ensure that consumers are provided with accurate information about products and their ingredients so they can make informed purchasing decisions. Consumers can avoid chemicals and ingredients they wish to avoid in particular products and can select products that contain the ingredients consumers' desire.

133. Absent such disclosures and labeling practices, consumers cannot, except by luck or happenstance, avoid chemicals like the ones at issue here.

134.    Ignoring California law and its incorporated federal regulations and guidance, Defendants mislabeled its Twix Cookie Bar and its Substantially Similar Products so that consumers were deprived of accurate information and, in fact, the Plaintiff and the members of the class were misled by the Defendants' concealment of a chemical they wished to avoid in their food.

135.    Defendants failed to list the ingredient polyglycerol polyricinoleic acid by its common or usual name in some of the Defendants' chocolate products like Twix Cookie Bar. Instead, Defendants listed it by a non-common or usual name PGPR. Moreover, when they list it they do not describe its function. Polyglycerol polyricinoleic acid is used to reduce the amount of high cost cocoa butter that is used in the chocolate. This form of economic adulteration saves the Defendants considerable amounts of money. Hiding the presence of the polyglycerol polyricinoleic acid allows them to pass off their chocolate products as higher value items. As the Defendants themselves note consumers should try and search out products that contain 100% cocoa butter. Defendants make this harder to do by their deceptive labeling practices.

136.    In listing PGPR as an ingredient, and failing to list the actual ingredient polyglycerol polyricinoleic acid by its common and usual name, Defendants not only misled the Plaintiff and the Class by concealing the presence of this chemical in Defendants' Twix Cookie Bar, Defendants also violated California Health & Safety Code § 110725 and the federal regulations (21 C.F.R. §§ 101.4 and 102.5) that have been adopted as law by the State of California.  Specifically, Defendants have failed to disclose the presence of the polyglycerol polyricinoleic acid by its common or usual name, as required by California Health & Safety Code § 110725 and 21 C.F.R. §§ 101.4 and 102.5. They also have failed to reveal its function.

137.    A reasonable consumer would expect that when a manufacturer lists the ingredients on its products, the product's ingredients are given their common or usual name as required by law.

138.    Plaintiff did not know, and had no reason to know, that Defendants' Twix Cookie Bar was misbranded because they failed to list an ingredient by the ingredient's common or usual

name, despite identical California and federal regulations requiring that that the chemicals be listed as ingredients by their common and usual names.

139.    Plaintiff and reasonable consumers are thus misled into purchasing Defendants' products with false and misleading ingredient names, which do not describe the basic nature of the food or its characterizing properties or ingredients, as provided in California Health & Safety Code § 110725 and 21 C.F.R. §§ 101.4 and 102.5(a) both of which have been adopted as law by California.

140.    Plaintiff who relied on the Defendants' labeling and ingredient lists was mislead by the Defendants' failure to use the common or usual name of the ingredient polyglycerol polyricinoleic acid and Defendants' utilization of a misleading ingredient name, which does not describe the basic nature of the food or its characterizing properties or ingredients

141.    Had Plaintiff been aware that the Defendants' Twix Cookie Bar she purchased contained polyglycerol polyricinoleic acid she would not have purchased the products or knowingly used them as food. Plaintiff had other alternatives that lacked such ingredients and Plaintiff also had cheaper alternatives.

142.    Defendants' claims in this respect are false and misleading and the products are in this respect misbranded under identical federal and California law, including California Health & Safety Code § 110725.  Misbranded products cannot be legally sold and are legally worthless. Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

## THE PURCHASED PRODUCTS ARE MISBRANDED UNDER THE SHERMAN LAW AND ARE MISLEADING AND DECEPTIVE

143.    Plaintiff purchased the Purchased Products in California during the Class Period and read and relied in substantial part on the claims on the labels of the products, including the nutrient content claims and other misleading and unlawful information thereon as specified above in making her purchasing decisions.

144.    Each Purchased Product has a label that violates the Sherman Law and is therefore misbranded and may not be sold or purchased.

145. Each Purchased Product has a label that is false, misleading and deceptive.

**A.    M&M Chocolate Candy, 1.69 oz**

146. Plaintiff purchased Mars M&M Chocolate Candy, 1.69 oz in the Class Period. The label (front and back) of the package purchased by Plaintiff is attached as **Exhibit A**.

147. The following unlawful and misleading language appears on the front label:

**"Calories 230" / "12% DV" (front and back)**

148. This product is unlawful, misleading, misbranded and violates the Sherman Law (through incorporation of 21 C.F.R. § 101.60(c) because the label touts 230 calories when there is no DV or RDI for calories and despite the fact the product is high in fat it does not have the required disclosure adjacent to the nutrient claim that informs consumers of the high levels of fat, saturated fat, cholesterol or sodium. It is also misleading because it understates the amount of calories which should be derived from fats or sugars.  The product is also unlawful, misleading and misbranded for violations of other provisions of California and Federal law as set out below.

149. Plaintiff read and reasonably relied on the label representation as set out above and based and justified the decision to purchase the product, in substantial part, on the label representation.  Also, Plaintiff reasonably relied and believed that this product was not misbranded under the Sherman Law and was therefore legal to buy and possess and would not have purchased it had she known it was misbranded and illegal to buy or possess.

150. Plaintiff was misled by Defendants' unlawful and misleading label on this product. Plaintiff would not have otherwise purchased this product had she known the truth about this product, *i.e*., not as healthy as labeled and contains high levels of fat and/or saturated fat. In addition, Plaintiff paid on unwarranted premium for this product.  Plaintiff had other food alternatives and Plaintiff also had cheaper alternatives.  Reasonable consumers would be misled by these label representations in the same way(s) as Plaintiff.

**B.    Twix Chocolate Candy, 1.79 oz**

151. Plaintiff purchased Twix Chocolate Candy, 1.79 oz. in the Class Period. The label (front and back) of the package purchased by Plaintiff is attached as **Exhibit B**.

152.    The following unlawful and misleading language appears on the front label:

**"Calories 250" / "13% DV"**

153.    The following unlawful and misleading language appears on the back label:

**"PGPR" (as an ingredient)**
**"Calories 250" / "13% DV"**

154.    This product is unlawful, misleading, misbranded and violates the Sherman Law (through incorporation of 21 C.F.R. § 101.60(c) because (i) the label touts 250 calories when there is no DV or RDI for calories and despite the fact the product is high in fat it does not have the required disclosure adjacent to the nutrient claim that informs consumers of the high levels of fat, saturated fat, cholesterol or sodium and (ii) the label conceals the use of polyglycerol polyricinoleic acid.  It is also misleading because it understates the amount of calories which should be derived from fats or sugars.  The product is also unlawful, misleading and misbranded for violations of other provisions of California and Federal law as set out below.

155.    Plaintiff read and reasonably relied on the label representations as set out above and based and justified the decision to purchase the product, in substantial part, on the label representations.  Also, Plaintiff reasonably relied and believed that this product was not misbranded under the Sherman Law and was therefore legal to buy and possess and would not have purchased it had she known it was misbranded and illegal to buy or possess.

156.    Plaintiff was misled by Defendants' unlawful and misleading label on this product. Plaintiff would not have otherwise purchased this product had she known the truth about this product, *i.e.*, not as healthy as labeled and contains high levels of fat and/or saturated fat and actually contained polyglycerol polyricinoleic acid.  In addition, Plaintiff paid on unwarranted premium for this product.  Plaintiff had other food alternatives and Plaintiff also had cheaper alternatives.  Reasonable consumers would be misled by these label representations in the same way(s) as Plaintiff.

**C.    <u>Dove Bar - Dark Chocolate, 3.3 oz.</u>**

157.    Plaintiff purchased Mars Dark Chocolate Dove Bar in the Class Period. The label (front and back) of the package purchased by Plaintiff is attached as **Exhibit C**.

158. The following unlawful and misleading language appears on the front label: **"Calories 220" / "11% DV"**

159. The following unlawful and misleading language appears on the back label:

**"Calories 220" / "11% DV"**

**"naturally occurring cocoa flavanols"**

**"a natural source of cocoa flavanols"**

160. This product is unlawful, misleading, misbranded and violates the Sherman Law (through incorporation of 21 C.F.R. § 101.60(c) because (i) the label touts 220 calories when there is no DV or RDI for calories and despite the fact the product is high in fat it does not have the required disclosure adjacent to the nutrient claim that informs consumers of the high levels of fat, saturated fat, cholesterol or sodium and (ii) the back label of the product is also unlawful, misleading and misbranded for violations the nutrient content rules regarding antioxidants. Flavanols do not have an RDI. It is also misleading because it understates the amount of calories which should be derived from fats or sugars.  The product is also unlawful, misleading and misbranded for violations of other provisions of California and Federal law as set out below.

161. Plaintiff read and reasonably relied on the label representations as set out above and based and justified the decision to purchase the product, in substantial part, on the label representations.  Also, Plaintiff reasonably relied and believed that this product was not misbranded under the Sherman Law and was therefore legal to buy and possess and would not have purchased it had she known it was misbranded and illegal to buy or possess.

162. Plaintiff was misled by Defendants' unlawful and misleading label on this product. Plaintiff would not have otherwise purchased this product had she known the truth about this product, *i.e.*, not as healthy as labeled and contains high levels of fat and/or saturated fat and  In addition, Plaintiff paid on unwarranted premium for this product.  Plaintiff had other food alternatives and Plaintiff also had cheaper alternatives.  Reasonable consumers would be misled by these label representations in the same way(s) as Plaintiff.

**D.   Dove Bar - Milk Chocolate, 3.3 oz**

163. Plaintiff purchased Mars Chocolate Dove Bar in the Class Period. The label (front

and back) of the package purchased by Plaintiff is attached as **Exhibit D**.

164. The following unlawful and misleading language appears on the front label:

**"Calories 230" / "12% DV"**

165. This product is unlawful, misleading, misbranded and violates the Sherman Law (through incorporation of 21 C.F.R. § 101.60(c) because the label touts 230 calories when there is no DV or RDI for calories and despite the fact the product is high in fat it does not have the required disclosure adjacent to the nutrient claim that informs consumers of the high levels of fat, saturated fat, cholesterol or sodium. It is also misleading because it understates the amount of calories which should be derived from fats or sugars. The product is also unlawful, misleading and misbranded for violations of other provisions of California and Federal law as set out below.

166. Plaintiff read and reasonably relied on the label representation as set out above and based and justified the decision to purchase the product, in substantial part, on the label representation. Also, Plaintiff reasonably relied and believed that this product was not misbranded under the Sherman Law and was therefore legal to buy and possess and would not have purchased it had she known it was misbranded and illegal to buy or possess.

167. Plaintiff was misled by Defendants' unlawful and misleading label on this product. Plaintiff would not have otherwise purchased this product had she known the truth about this product, *i.e*., not as healthy as labeled and contains high levels of fat and/or saturated fat. In addition, Plaintiff paid on unwarranted premium for this product. Plaintiff had other food alternatives and Plaintiff also had cheaper alternatives. Reasonable consumers would be misled by these label representations in the same way(s) as Plaintiff.

**E.     Snickers Bar - 11.8 oz.**

168. Plaintiff purchased Snickers Bar, 11.8 oz in the Class Period. The label (front and back) of the package purchased by Plaintiff is attached as **Exhibit E**.

169. The following unlawful and misleading language appears on the front label:

**"Calories 230" / "12% DV"**

170. This product is unlawful, misleading, misbranded and violates the Sherman Law (through incorporation of 21 C.F.R. § 101.60(c) because the label touts 230 calories when there is

no DV or RDI for calories and despite the fact the product is high in fat it does not have the required disclosure adjacent to the nutrient claim that informs consumers of the high levels of fat, saturated fat, cholesterol or sodium. It is also misleading because it understates the amount of calories which should be derived from fats or sugars.  The product is also unlawful, misleading and misbranded for violations of other provisions of California and Federal law as set out below.

171.    Plaintiff read and reasonably relied on the label representation as set out above and based and justified the decision to purchase the product, in substantial part, on the label representation.  Also, Plaintiff reasonably relied and believed that this product was not misbranded under the Sherman Law and was therefore legal to buy and possess and would not have purchased it had she known it was misbranded and illegal to buy or possess.

172.    Plaintiff was misled by Defendants' unlawful and misleading label on this product. Plaintiff would not have otherwise purchased this product had she known the truth about this product, *i.e*., not as healthy as labeled and contains high levels of fat and/or saturated fat. In addition, Plaintiff paid on unwarranted premium for this product.  Plaintiff had other food alternatives and Plaintiff also had cheaper alternatives.  Reasonable consumers would be misled by these label representations in the same way(s) as Plaintiff.

**DEFENDANTS HAVE VIOLATED CALIFORNIA LAW BY MANUFACTURING, ADVERTISING DISTRIBUTING AND SELLING MISBRANDED FOOD PRODUCTS**

173.    Defendants have manufactured, advertised, distributed and sold products that are misbranded under California law. Misbranded products cannot be legally manufactured, advertised, distributed, sold or held and are legally worthless as a matter of law.

174.    Defendants have violated California Health & Safety Code §§ 109885 and 110390 which make it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

175.    Defendants have violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any misbranded food.

176.    Defendants have violated California Health & Safety Code § 110398 which makes it unlawful to deliver or proffer for delivery any food that has been falsely advertised.

177.    Defendants have violated California Health & Safety Code § 110660 because their labeling is false and misleading in one or more ways.

178.    Defendants' Purchased Products are misbranded under California Health & Safety Code § 110665 because their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations adopted thereto.

179.    Defendants' Purchased Products are misbranded under California Health & Safety Code § 110670 because their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto.

180.    Defendants' Purchased Products are misbranded under California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on their labeling either are missing or not sufficiently conspicuous.

181.    Defendants have violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

182.    Defendants have violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

183.    Defendants have violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

184.    Defendants have violated the standard set by 21 C.F.R. § 101.2, 101.3, 101.4; 101.9, 101.12, 101.22, 102.5, and 105.66 all of which have been incorporated by reference in the Sherman Law, by failing to include on their product labels the nutritional information required by law.

185.    Defendants have violated and continue to violate the standards set by 21 C.F.R. §§ 101.13, 101.54, 101.60 and 105.66, which have been adopted by reference in the Sherman Law, by including unauthorized nutrient content claims on their products.

186.     Defendants have violated and continue to violate the standard set by 21 C.F.R. § 101.18 which have been adopted by reference in the Sherman Law, by misrepresenting their non-low-calorie food products as low-calorie alternatives to other food products.

187.     Defendants have violated and continue to violate the standard set by 21 C.F.R. § 101.60 which have been adopted by reference in the Sherman Law, by representing either expressly or implicitly that their products are low-calorie and or lack sugar when they fail to meet the requirements for making such claims.

188.     Defendants have manufactured, distributed, advertised, marketed and sold products misbranded in violation of the standards contained in 21 U.S.C. § 343(r), which has been incorporated in the Sherman Law, and continue to do so.  Pursuant to 21 U.S.C. § 343(r), food is misbranded if, as here, it bears a nutrient content claim despite failing to meet the requirements for making that claim.  *See* California Health and Safety Code § 110670.

189.     In addition to their violation of sections (q) and (r) of 21 U.S.C. § 343, Defendants have manufactured, distributed, advertised, marketed and sold products misbranded in violation of the standard set by sections a, f, and j of 21 U.S.C. § 343 which has been adopted by reference in the Sherman Law, and continue to do so.  Pursuant to 21 U.S.C. § 343 food shall be deemed to be misbranded if, as in the instant case:

> (a) it bears a false or misleading label …
> (f) its label fails to conspicuously depict any word, statement, or other information required to appear on the label or labeling and be prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use; …
>  (j) it purports to be or is represented for special dietary uses, and its label fails to bear such information concerning its vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

190.     Each of the federal requirements has been expressly adopted by the State of California and thus each of Defendants' violations of these federal standards constitutes an independent violation of state law.

**PLAINTIFF PURCHASED DEFENDANTS' PURCHASED PRODUCTS**

191.    Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.

192.    Plaintiff purchased Defendants' Purchased Products at issue in this Class Action Complaint since 2008 and throughout the Class Period.

193.    During the Class Period, Plaintiff spent more than twenty-five dollars ($25.00) on Defendants' Purchased Products.

194.    Plaintiff read the labels on Defendants' products, including nutrient content claims and other unlawful and misleading information described above on the labels before purchasing them. Defendants' failure to disclose the presence of risk-increasing nutrients and calories and their utilization of false and improper labeling claims was deceptive because it falsely conveyed to the Plaintiff the net impression that the Purchased Products she bought made better contributions to a diet than other non-misbranded similar products, and did not contain any nutrients or calories at levels that raised the risk of diet-related disease or health related condition. Defendants' utilization of unlawful and unauthorized nutrient content claims also misled the Plaintiff with respect to the nature of the products she was purchasing.

195.    Plaintiff relied on Defendants' package labeling nutrient content claims and other unlawful and misleading information on the labels and based and justified the decision to purchase Defendants' products in substantial part on Defendants' package labeling. Plaintiff would have foregone purchasing Defendants' products and bought other products readily available at a lower price.

196.    At point of sale, Plaintiff did not know, and had no reason to know, that Defendants' products were misbranded as set forth herein, and would not have bought the products had she known the truth about them.

197.    As a result of Defendants' misrepresentations, Plaintiff and thousands of others in California and the United States purchased the products at issue.

198.    Defendants' labeling, advertising and marketing as alleged herein are false and misleading and designed to increase sales of the products at issue. Defendants' misrepresentations

are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendants' representations in determining whether to purchase the products at issue.

199.    A reasonable person would also attach importance to whether Defendants' Purchased Products were legally salable, and capable of legal possession, and to Defendants' representations about these issues in determining whether to purchase the products at issue. Plaintiff would not have purchased Defendants' Purchased Products had she known they were not capable of being legally sold or held and did not possess the characteristics or nutritional attributes they were falsely represented to have by the Defendants.

## CLASS ACTION ALLEGATIONS

200.    Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

> All persons in California who purchased a food product manufactured or distributed by Defendants that (1) bears a flavanol claim on its label; or (2) a percentage daily value claim for calories on its label; or (3) lists PGPR as an ingredient on its label since April 11, 2008.

201.    The following persons are expressly excluded from the Class:  (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

202.    This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

203.    Numerosity:  Based upon Defendants' publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class number in the thousands, and that joinder of all Class members is impracticable.

204.    Common Questions Predominate:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each

Class member to recover.  Questions of law and fact common to each Class member include, for example:

     a.    Whether Defendants engaged in unlawful and misleading business practices by failing to properly package and label their Purchased Products sold to consumers;

     b.    Whether the food products at issue were misbranded or unlawfully packaged and labeled as a matter of law;

     c.    Whether Defendants made unlawful and misleading nutrient content flavanol claims with respect to their food products sold to consumers;

     d.    Whether Defendants violated California Bus. & Prof. Code § 17200, California Bus. & Prof. Code § 17500, and the Sherman Law;

     e.    Whether Plaintiff and the Class is entitled to equitable and/or injunctive relief;

     f.    Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class.

205.    <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendants' Purchased Products during the Class Period.  Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct in violation of California law.  The injuries of each member of the Class were caused directly by Defendants' wrongful conduct.  In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

206.    <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.  Plaintiff has retained highly competent and experienced class action attorneys to represent their interests and those of the members of the Class.  Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate

1   this class action, and Plaintiff and her counsel are aware of their fiduciary responsibilities to the

2   Class members and will diligently discharge those duties by vigorously seeking the maximum

3   possible recovery for the Class.

4        207.   <u>Superiority</u>:  There is no plain, speedy or adequate remedy other than by

5   maintenance of this class action.  The prosecution of individual remedies by members of the

6   Class will tend to establish inconsistent standards of conduct for Defendants and result in the

7   impairment of Class members' rights and the disposition of their interests through actions to

8   which they were not parties.  Class action treatment will permit a large number of similarly

9   situated persons to prosecute their common claims in a single forum simultaneously, efficiently

10   and without the unnecessary duplication of effort and expense that numerous individual actions

11   would engender.  Further, as the damages suffered by individual members of the Class may be

12   relatively small, the expense and burden of individual litigation would make it difficult or

13   impossible for individual members of the Class to redress the wrongs done to them, while an

14   important public interest will be served by addressing the matter as a class action.  Class

15   treatment of common questions of law and fact would also be superior to multiple individual

16   actions or piecemeal litigation in that class treatment will conserve the resources of the Court and

17   the litigants, and will promote consistency and efficiency of adjudication.

18        208.   The prerequisites to maintaining a class action for injunctive or equitable relief

19   pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds

20   generally applicable to the Class, thereby making appropriate final injunctive or equitable relief

21   with respect to the Class as a whole.

22        209.   The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3)

23   are met as questions of law or fact common to class members predominate over any questions

24   affecting only individual members, and a class action is superior to other available methods for

25   fairly and efficiently adjudicating the controversy.

26        210.   Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be

27   encountered in the management of this action that would preclude its maintenance as a class

28   action.

# FIRST CAUSE OF ACTION

### Business and Professions Code § 17200, *et seq.*
### Unlawful Business Acts and Practices

211.     Plaintiff incorporates by reference each allegation set forth above.

212.     Defendants' conduct constitutes unlawful business acts and practices.

213.     Defendants sold Purchased Products nationwide and in California.

214.     Defendants are corporations and, therefore are "persons" within the meaning of the Sherman Law.

215.     Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of the advertising provisions of the Sherman Law (Article 3) and the misbranded food provisions of the Sherman Law (Article 6).

216.     Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of § 17500, *et seq.*, which forbids untrue and misleading advertising. Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of § the Consumer Legal Remedies Act, Cal Civ. Code § 17500, *et seq.*

217.     Defendants sold Plaintiff and the Class Purchased Products that were not capable of being sold legally and which were legally worthless. Plaintiff and the Class paid a premium price for the Purchased Products.

218.     As a result of Defendants' illegal business practices, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any Class Member any money paid for the Purchased Products.

219.     Defendants' unlawful business acts present a threat and reasonable continued likelihood of deception to Plaintiff and the Class.

220.     As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendants'

1   ill-gotten gains and restore any money paid for Defendants' Purchased Products by Plaintiff and

2   the Class.

3   **SECOND CAUSE OF ACTION**

4   **Business and Professions Code § 17200, *et seq.***
**Unfair Business Acts and Practices**

5       221.    Plaintiff incorporates by reference each allegation set forth above.

6       222.    Defendants' conduct as set forth herein constitutes unfair business acts and

7   practices.

8       223.    Defendants sold Purchased Products nationwide and in California during the Class

9   Period.

10      224.    Defendants' deceptive marketing, advertising, packaging and labeling of their

11  Purchased Products was of no benefit to consumers, and the harm and injury to consumers and

12  competition is substantial. Plaintiff and members of the Class suffered a substantial injury by

13  virtue of buying Defendants' Purchased Products that they would not have purchased absent the

14  Defendants' illegal conduct as set forth herein.

15      225.    Defendants' sold Plaintiff and the Class Purchased Products that were not capable

16  of being legally sold and that were legally worthless. Plaintiff and the Class paid a premium price

17  for the Purchased Products. Plaintiff and the Class who purchased Defendants' Purchased

18  Products had no way of reasonably knowing that the products were misbranded and were not

19  properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided

20  the injury each of them suffered.

21      226.    The consequences of Defendants' conduct as set forth herein outweighs any

22  justification, motive or reason therefor.  Defendants' conduct is and continues to be immoral,

23  unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and

24  the Class.

25      227.    As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business

26  and Professions Code § 17203, are entitled to an order enjoining such future conduct by

27  Defendant, and such other orders and judgments which may be necessary to disgorge Defendants'

28

1   ill-gotten gains and restore any money paid for Defendants' Purchased Products by Plaintiff and

2   the Class.

### THIRD CAUSE OF ACTION

3

4   **Business and Professions Code § 17200, *et seq.*
Fraudulent Business Acts and Practices**

5       228.    Plaintiff incorporates by reference each allegation set forth above.

6       229.    Defendants' conduct as set forth herein constitutes fraudulent business practices

7   under California Business and Professions Code sections § 17200, *et seq.*

8       230.    Defendants sold Purchased Products nationwide and in California during the Class

9   Period.

10      231.    Defendants' misleading marketing, advertising, packaging and labeling of the

11  Purchased Products and its misrepresentations that the products at issue were salable, capable of

12  legal possession and not misbranded were likely to deceive reasonable consumers, and in fact,

13  Plaintiff and members of the Class were deceived.  Defendants have engaged in fraudulent

14  business acts and practices.

15      232.    Defendants' fraud and deception caused Plaintiff and the Class to purchase

16  Defendants' Purchased Products that they would otherwise not have purchased had they known

17  the true nature of those products.

18      233.    Defendants sold Plaintiff and the Class Purchased Products that were not capable

19  of being sold or held legally and that were legally worthless. Plaintiff and the Class paid a

20  premium price for the Purchased Products.

21      234.    As a result of Defendants' conduct as set forth herein, Plaintiff and the Class,

22  pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future

23  conduct by Defendants, and such other orders and judgments which may be necessary to disgorge

24  Defendants' ill-gotten gains and restore any money paid for Defendants' Purchased Products by

25  Plaintiff and the Class.

26

27

28

**FOURTH CAUSE OF ACTION**

**Business and Professions Code § 17500,** *et seq.*
**Misleading and Deceptive Advertising**

235.  Plaintiff incorporates by reference each allegation set forth above.

236.  Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500*, et seq.* for misleading and deceptive advertising against Defendants.

237.  Defendants sold Purchased Products nationwide and in California during the Class Period.

238.  Defendants engaged in a scheme of offering Defendants' Purchased Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendants' Purchased Products.  Defendants' advertisements and inducements were made within California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendants' Purchased Products and are statements disseminated by Defendants to Plaintiff and the Class that were intended to reach members of the Class.  Defendants knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

239.  In furtherance of their plan and scheme, Defendants prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the ingredients contained in and the nature of Defendants' Purchased Products.  Plaintiff and the Class necessarily and reasonably relied on Defendants' materials, and were the intended targets of such representations.

240.  Defendants' conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable consumers by obfuscating the true ingredients and nature of the Defendants' Purchased Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

241.    As a result of Defendants' violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff and the Class.  Misbranded products cannot be legally sold and are legally worthless. Plaintiff and the Class paid a premium price for the Purchased Products.

242.    Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Purchased Products by Plaintiff and the Class.

### FIFTH CAUSE OF ACTION

### Business and Professions Code § 17500, *et seq.*
### Untrue Advertising

243.    Plaintiff incorporates by reference each allegation set forth above.

244.    Plaintiff asserts this cause of action against Defendants for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

245.    Defendants sold mislabeled and Purchased Products nationwide and in California during the Class Period.

246.    Defendants engaged in a scheme of offering the Defendants' Purchased Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of the Defendants' Purchased Products.  Defendants' advertisements and inducements were made in California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase the Defendants' Purchased Products, and are statements disseminated by Defendants to Plaintiff and the Class.  Defendants knew, or in the exercise of reasonable care should have known, that these statements were untrue.

247.    In furtherance of their plan and scheme, Defendants prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the ingredients contained in the Defendants' Purchased Products,

and falsely misrepresented the nature of those products. Plaintiff and the Class were the intended targets of such representations and would reasonably be deceived by Defendants' materials.

248.    Defendants' conduct in disseminating untrue advertising throughout California and nationwide deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of the Defendants' Purchased Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

249.    As a result of Defendants' violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff and the Class. Misbranded products cannot be legally sold and are legally worthless. Plaintiff and the Class paid a premium price for the Purchased Products.

250.    Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Purchased Products by Plaintiff and the Class.

## SIXTH CAUSE OF ACTION

## Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*

251.    Plaintiff incorporates by reference each allegation set forth above.

252.    This cause of action is brought pursuant to the CLRA. Defendants' violations of the CLRA were and are willful, oppressive and fraudulent, thus supporting an award of punitive damages.

253.    Plaintiff and the Class are entitled to actual and punitive damages against Defendants for its violations of the CLRA. In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the Class are entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

254.    Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

255. Defendants sold Purchased Products in California during the Class Period.

256. Plaintiff and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

257. Defendants' Purchased Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

258. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(5), of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents the particular ingredients, characteristics, uses, benefits and quantities of the goods.

259. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents the particular standard, quality or grade of the goods.

260. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods with the intent not to sell the goods as advertised.

261. By engaging in the conduct set forth herein, Defendants have violated and continue to violate Section 1770(a)(16) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it represents that a subject of a transaction has been supplied in accordance with a previous representation when they have not.

262. Plaintiff requests that the Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2). If Defendants are not restrained from engaging in these practices in the future, Plaintiff and the Class will continue to suffer harm.

263. Pursuant to Section 1782(a) of the CLRA, on May 18, 2012, Plaintiff's counsel served Defendants with notice of Defendants' violations of the CLRA. As authorized by Mars'

1    counsel, Plaintiff's counsel served Mars by certified mail, return receipt requested. Mars has not

2    responded.

3        264.    Mars has failed to provide appropriate relief for its violations of the CLRA within

4    30 days of its receipt of the CLRA demand notice. Accordingly, pursuant to Sections 1780 and

5    1782(b) of the CLRA, Plaintiff is entitled to recover actual damages, punitive damages, attorneys'

6    fees and costs, and any other relief the Court deems proper.

7        265.    Plaintiff makes certain claims in the Class Action Complaint that were not

8    included in the original Complaint filed on April 13, 2012, and were not included in Plaintiff's

9    CLRA demand notice.

10       266.    Plaintiff will demonstrate that the violations of the CLRA by Defendants were

11   willful, oppressive and fraudulent, thus supporting an award of actual and punitive damages.

12       267.    Consequently, Plaintiff and the Class are entitled to actual and punitive damages

13   against Defendants for its violations of the CLRA. In addition, pursuant to Cal. Civ. Code §

14   1782(a)(2), Plaintiff and the Class will be entitled to an order enjoining the above-described acts

15   and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and

16   attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal.

17   Civ. Code § 1780.

18                               **JURY DEMAND**

19       Plaintiff hereby demands a trial by jury of her claims.

20                              **PRAYER FOR RELIEF**

21       WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on

22   behalf of the general public, prays for judgment against Defendants as follows:

23       A.    For an order certifying this case as a class action and appointing Plaintiff and her

24   counsel to represent the Class;

25       B.    For an order awarding, as appropriate, damages, restitution or disgorgement to

26   Plaintiff and the Class for all causes of action;

27       C.    For an order requiring Defendants to immediately cease and desist from selling

28   their Purchased Products in violation of law; enjoining Defendants from continuing to market,

CLASS ACTION COMPLAINT                                                          54

1    advertise, distribute, and sell these products in the unlawful manner described herein; and

2    ordering Defendants to engage in corrective action;

3        D.      For all remedies available pursuant to Cal. Civ. Code § 1780;

4        E.      For an order awarding attorneys' fees and costs;

5        F.      For an order awarding punitive damages;

6        G.      For an order awarding pre-and post-judgment interest; and

7        H.      For an order providing such further relief as this Court deems proper.

8        Dated:  October 1, 2013          Respectfully submitted,

9

10                     */s/ Ben F. Pierce Gore*
                    Ben F. Pierce Gore (SBN 128515)

11                     PRATT & ASSOCIATES
                    1871 The Alameda, Suite 425

12                     San Jose, CA 95126
                    Telephone:  (408) 429-6506

13                     Fax:  (408) 369-0752
                    pgore@prattattorneys.com

14

                    J. Price Coleman (*pro hac vice*)

15                     COLEMAN LAW FIRM
                    1100 Tyler Avenue, Suite 102

16                     Oxford, MS 38655
                    Telephone: (662) 236-0047

17                     Fax: (662) 513-0072
                    colemanlawfirmpa@bellsouth.net

18                     *Attorneys for Plaintiff*

19               **CERTIFICATE OF SERVICE**

20        I hereby certify that a true and correct copy of the forgoing was filed and served

21 via the Court's ECF filing system this 1st day of October, 2013 on all counsel of record.

22                     *s/Pierce Gore*
                    Ben F. Pierce Gore

23

24

25

26

27

28