Stephen D. Raber (State Bar No. 121958)
David M. Horniak (State Bar No. 268441)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Fax:  (202) 434-5029
E-mail:  sraber@wc.com
E-mail:  dhorniak@wc.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| PHYLLIS GUSTAVSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARS, INC. and MARS CHOCOLATE NORTH AMERICA, LLC,<br><br>Defendants. | **Case No. 13-cv-04537-LHK**<br><br>**MARS'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  April 3, 2014<br>Time:  1:30 p.m.<br>Place:  Courtroom 8, 4th Floor<br>Judge:  Hon. Lucy H. Koh |

### NOTICE OF MOTION

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 3, 2014, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 8, 4th Floor, of this Court, located at 280 South 1st Street, San Jose, California, Defendants Mars, Inc. and Mars Chocolate North America, LLC (collectively "Mars") will and hereby do move the Court for an order dismissing claims alleged in Plaintiff Phyllis Gustavson's Class Action and Representative Action Complaint for Damages, Equitable and Injunctive Relief.  This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the following grounds:

- Plaintiff's claims regarding Mars's "Guideline Daily Amounts" icons are barred by the express preemption provision in the Nutritional Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343-1(a);

- Plaintiff's claims regarding statements that Dove Dark Chocolate is a "natural source" of "naturally occurring" cocoa flavanols are also expressly preempted by the NLEA; and

- Plaintiff's claims regarding Mars's "Guideline Daily Amounts" icons implicate technical and policy questions that are under active consideration by the FDA and thus committed to the primary jurisdiction of the FDA.

Mars's Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, any reply memorandum, the pleadings and files in this action, and such other matters as may be presented at or before the hearing.

- i -

Dated:  November 15, 2013                    Respectfully submitted,


By: */s/ Stephen D. Raber*
Stephen D. Raber (State Bar No. 121958)
David M. Horniak (State Bar No. 268441)
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Fax:  (202) 434-5029
E-mail:  sraber@wc.com
E-mail:  dhorniak@wc.com

*Attorneys for Defendants*

- ii -

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

STATEMENT OF ISSUES TO BE DECIDED .................................................................. vi

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD .......................................................................................................... 4

ARGUMENT ....................................................................................................................... 4

I.      Plaintiff's Claims Are Expressly Preempted by Federal Law. ................................. 4

A.      The NLEA Preempts Plaintiff's Claims Regarding Mars's Calorie-Related GDA Icons. . 6

   1.   Percent DV of Calories. ...................................................................................... 6

   2.   Disclosure Statement .......................................................................................... 8

   3.   The "Nutrition Keys (Facts Up Front)" Labeling Program ................................. 8

B.      The NLEA Preempts Plaintiff's Claims Based on Statements About the Presence of Flavanols in Cocoa. ......................................................................................... 10

II.     This Court Should also Dismiss Plaintiff's Claims Regarding Mars's Calorie-Related GDA Icons Under the Primary Jurisdiction Doctrine. ....................................................... 15

CONCLUSION .................................................................................................................... 18

1

## **TABLE OF AUTHORITIES**

2

### **FEDERAL CASES**

3

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................4

4

5

*Chacanaca v. Quaker Oats Co.,*
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ...............................................5

6

*Clark v. Time Warner Cable,*
    523 F.3d 1110 (9th Cir. 2008) ...............................................15, 16, 18

7

8

*Corley v. United States,*
    556 U.S. 303 (2009).............................................................................14

9

*Gordon v. Church & Dwight Co.,*
    No. C 09-5585, 2010 WL 1341184 (N.D. Cal. Apr. 2, 2010) .........16, 18

10

11

*Gustavson v. Wrigley Sales Co.,* No. 12-CV-01861-LHK, --- F. Supp. 2d ----, 2013 WL
    5201190 (N.D. Cal. Sept. 16, 2013) ..................................................passim

12

13

*Hinds Investments, LP v. Angioli,*
    654 F.3d 846 (9th Cir. 2011) ...............................................................4

14

*Kane v. Chobani, Inc.,*
    No. 12-CV-02425-LHK, 2013 WL 3703981 (N.D. Cal. July 12, 2013), *vacated by*

15

    2013 WL 5529723 (N.D. Cal. July 25, 2013)...............................17, 18

16

*Lam v. General Mills, Inc.,* 859 F. Supp. 2d 1097 (N.D. Cal. 2012)........................................4, 5

17

*Peviani v. Hostess Brands, Inc.,*
    750 F. Supp. 2d 1111 (C.D. Cal. 2010) ...............................................5

18

19

*Silvers v. Sony Pictures Entm't, Inc.,*
    402 F.3d 881 (9th Cir. 2005) ...............................................................13

20

21

*Trazo v. Nestle USA, Inc.,*
    No. 5:12-CV-2272 PSG, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013)..................1, 11, 12, 13

22

23

*Turek v. General Mills, Inc.,*
    662 F.3d 423 (7th Cir. 2011) ...............................................................5

24

*United States v. Mead Corp.,*
    533 U.S. 218 (2001)............................................................................14

25

26

*Wilson v. Frito-Lay N. Am., Inc.,*
    No. 12-1586 SC, --- F. Supp. 2d ----, 2013 WL 5777920 (N.D. Cal. Oct. 24, 2013).............15

27

28

### **STATUTES**

21 U.S.C. §§ 301 *et seq.* ...................................................................................4

21 U.S.C. § 343 ...........................................................................5, 10, 11, 14

21 U.S.C. § 343-1 ...........................................................................................5

21 U.S.C. § 393 ...............................................................................................4

Cal. Bus. & Prof. Code §§ 17200 *et seq.* .....................................................3

Cal. Bus. & Prof. Code §§ 17500 *et seq.* .....................................................3

Cal. Civ. Code §§ 1750 *et seq.* ....................................................................4

Nutrition Labeling and Education Act, Pub. L. No. 101-535, 104 Stat. 2353 (1990) ...................4

Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010)..............9

## REGULATIONS

21 C.F.R. § 100.1 ....................................................................................5, 15

21 C.F.R. § 101.9 ...........................................................................................7

21 C.F.R. § 101.13 ................................................................................. passim

21 C.F.R. § 101.54 .............................................................11, 12, 13, 14

Food Labeling: Nutrient Content Claims, 58 Fed. Reg. 2302 (Jan. 6, 1993) ...........................8, 14

Food Labeling: Prominence of Calories, 70 Fed. Reg. 17,008 (Apr. 4, 2005).........................7, 17

Food Labeling: Revision of Reference Values and Mandatory Nutrients, 72 Fed. Reg. 62,149 (Nov. 2, 2007)........................................7, 18

Food Labeling; Calorie Labeling of Articles of Food in Vending Machines, 76 Fed. Reg. 19,238 (Apr. 6, 2011)........................................10

Regulatory Agenda, 78 Fed. Reg. 44,252 (July 23, 2013)......................................7, 18

## RULES

Federal Rule of Civil Procedure 12 ...........................................................4, 18

- v -

## STATEMENT OF ISSUES TO BE DECIDED

1. Are Plaintiff's claims regarding Mars's "Guideline Daily Amounts" icons preempted by the NLEA, 21 U.S.C. § 343-1(a), because they seek to impose labeling requirements not identical to the FDCA and its implementing regulations?

2. Are Plaintiff's claims regarding statements that Dove Dark Chocolate is a "natural source" of "naturally occurring" cocoa flavanols expressly preempted by the NLEA for the same reason?

3. Should the Court decline to adjudicate Plaintiff's claims regarding Mars's "Guideline Daily Amounts" icons because they implicate technical and policy questions that are under active consideration by the FDA and thus committed to the primary jurisdiction of the FDA?

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3      Plaintiff's latest complaint against Mars renews Plaintiff's allegations that the following

4 labeling practices violate FDA regulations and are therefore false and misleading: (i) use of

5 green Guideline Daily Amounts ("GDA") icons to provide truthful front-of-pack calorie

6 information; (ii) truthful statements that Dove Dark Chocolate is a "natural source" of "naturally

7 occurring" cocoa flavanols; and (iii) use of the abbreviation "PGPR" to refer to polyglycerol

8 polyricinoleic acid.   By this motion, Mars seeks to eliminate, once and for all, the first two of

9 these three remaining claims.[1]

10      First, this Court should dismiss Plaintiff's claims that Mars's calorie-related GDA icons

11 violate FDA regulations.  This Court has already once dismissed these claims, reasoning that

12 they are expressly preempted by FDA regulations authorizing the precise statements Plaintiff

13 claims are unlawful.  Plaintiff's renewed allegations—a mishmash of previously dismissed

14 allegations and new, quasi-factual assertions about the "Nutrition Keys (Facts Up Front)"

15 voluntary labeling program—do nothing to overcome this express regulatory bar.

16      Second, Mars seeks dismissal of Plaintiff's claims that the statements "natural source" of

17 "naturally occurring" cocoa flavanols fail to comply with FDA regulations governing nutrient

18 content claims.  One court in this district has already held that the regulations do not apply to the

19 statement "natural source of antioxidants" because the statement is not a nutrient content claim.

20 *See Trazo v. Nestle USA, Inc.*, No. 5:12-CV-2272 PSG, 2013 WL 4083218, at *9 (N.D. Cal.

21 Aug. 9, 2013) (internal quotation marks omitted).  Although Plaintiff's flavanols claims survived

22 Mars's last motion to dismiss, Mars respectfully submits that this Court's decision on that point

23 is in conflict with *Trazo*, and that *Trazo*'s reasoning—based on the express language of the

24 FDCA and FDA regulations—is more persuasive than the single, conclusory FDA warning letter

25 on which Plaintiff relies.

26 ───────────────────

27 [1] Mars is not moving to dismiss Plaintiff's claims based on use of the term "PGPR."

28

Finally, Mars seeks dismissal of Plaintiff's calorie-related GDA icons claims for the additional and alternative reason that they involve issues—calorie-related front-of-pack nutrition labeling—that are committed to the primary jurisdiction of the FDA.  The FDA is actively regulating these issues, has indicated its intent to propose regulations and guidance, and has stated that it will exercise enforcement discretion.  For these reasons, the Court should "step back and allow the FDA regulatory process to play out."  *Gustavson v. Wrigley Sales Co.*, No. 12-CV-01861-LHK, --- F. Supp. 2d ----, 2013 WL 5201190, at *17 (N.D. Cal. Sept. 16, 2013).

## BACKGROUND

On April 13, 2012, Plaintiff filed a putative class action against Wrigley Sales Company and Wm. Wrigley Jr. Company (collectively, "Wrigley"), alleging that the labels of Wrigley's chewing gum, breath mints, and hard candy products violate FDA regulations.  *See* Wrigley Dkt. No. 1.[2]  Plaintiff filed an amended complaint on July 23, 2012, adding two new defendants, Mars, Inc. and Mars Chocolate North America, LLC, and a slew of new allegations relating to the following five Mars chocolate products: (1) M&M chocolate candy, 1.69 oz.; (2) Twix chocolate candy, 1.79 oz.; (3) Dove Dark Chocolate Bar, 3.3 oz.; (4) Dove Milk Chocolate Bar, 3.3 oz.; and (5) Snickers Fun Size, 11.8 oz.  *See* Wrigley Dkt. No. 21, Am. Compl. ¶ 213(F)–(J).  Among other things, Plaintiff alleged that the products' labels violate FDA regulations and are false and misleading because:

- the green GDA icon on all five products' labels provides a percent daily value ("DV") of calories based on a 2,000 calorie diet and is not accompanied by a disclosure statement referring to nutrition information on the back panel, *id.* ¶¶ 84–100;
- statements that Dove Dark Chocolate is "a natural source of cocoa flavanols" and that the "COCOAPRO® process helps retain much of the naturally occurring cocoa flavanols" do not comply with the FDA's "good source" regulations, *id.* ¶¶ 70–83; and

---

[2] For ease of reference, citations to filings in the Wrigley case (No. 12-01861) will use the shorthand "Wrigley Dkt."; citations to the Mars case (No. 13-04537) will use "Mars Dkt."

- Twix uses the abbreviation "PGPR" for polyglycerol polyricinoleic acid, *id.* ¶¶ 138–155.

This Court granted in part and denied in part Mars's motion to dismiss these claims on September 16, 2013.  *See Gustavson*, 2013 WL 5201190.  On the one hand, this Court dismissed Plaintiff's calorie-related GDA icon claims, finding that the claims were expressly preempted because the icons "comply with all applicable federal regulations."  *Id.* at *13.  This Court agreed with Mars that 21 C.F.R. § 101.13(i)(3) expressly allows Mars to declare "the amount *or percentage*" of calories on its labels; that providing a "percentage DV [of calories] based on a 2,000 calorie diet could not possibly be false or misleading within the meaning of the FDA's regulations[] because the FDA *itself* uses a 2,000 calorie day baseline to calculate nutrient DVs;" and that section 101.13(i)(3) expressly permits Mars to provide calorie-related information without the need to "accompany its calorie claims with disclosure statements concerning fat and/or saturated fat."  *Id.* (internal quotation marks omitted).  On the other hand, this Court declined to dismiss Plaintiff's cocoa flavanols and PGPR claims.  *See id.* at *21.

Plaintiff filed an amended complaint against Mars under a new case number on October 1, 2013.  *See* Compl. (Mars Dkt. No. 2).  The amended complaint premises its allegations on the same five Mars products identified in Plaintiff's previous complaint,[3] *see id.* ¶ 2, and renews Plaintiff's allegations based on (i) calorie-related GDA icons, (ii) statements regarding flavanols, and (iii) use of the term PGPR, *see id.* ¶¶ 57–142.  In an attempt to revive the dismissed calorie-related GDA icon claims, the amended complaint adds pages of new allegations regarding the voluntary labeling program known as "Nutrition Keys (Facts Up Front)."  *See id.* ¶¶ 72–124.

Plaintiff's renewed complaint alleges six state-law causes of action:  (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* (claims 1, 2, and 3); (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.* (claims 4 and 5); and (3) violation of the Consumers Legal Remedies Act

---

[3] Mars is filing concurrently with this motion a request for judicial notice of the labeling of the five products at issue.  *See* Defs.' Req. for Judicial Notice ("RJN") Exs. A–E.

("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* (claim 6).  Compl. ¶¶ 211–267.  Plaintiff seeks to represent a class of "[a]ll persons in California who purchased a food product manufactured or distributed by Defendants . . . since April 11, 2008" bearing one or more of the above-described statements.  *Id.* ¶ 200.  In addition to the five types of candy Plaintiff claims to have purchased, Plaintiff identifies thirty-nine additional types of candy she did not purchase, but whose purchasers she alleges should be part of the proposed class because they purchased "[s]ubstantially [s]imilar" products.  *Id.* ¶ 3.  Plaintiff alleges that all forty-four products' labels display calorie-related GDA icons; that four refer to cocoa flavanols; and that twelve use the abbreviation "PGPR."  *Id.* ¶ 3.

## LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The complaint cannot make only an "unadorned, the-defendant-unlawfully-harmed-me accusation," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.* (internal quotation marks omitted).  "Dismissal is proper where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim."  *Hinds Invs., LP v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).

## ARGUMENT

**I.    Plaintiff's Claims Are Expressly Preempted by Federal Law.**

The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, establishes a comprehensive federal regulatory scheme to ensure that food is safe and is labeled in a manner that does not mislead consumers.  The FDCA vests the FDA with authority to "protect the public health by ensuring that . . . foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A) (2012).

In 1990, Congress enacted the NLEA, Pub. L. No. 101-535, 104 Stat. 2353 (1990), which amended the FDCA to "'establish uniform national standards for the nutritional claims and the required nutrient information displayed on food labels.'"  *Lam v. Gen. Mills, Inc.*, 859 F. Supp.

- 4 -

2d 1097, 1102 (N.D. Cal. 2012) (quoting H.R. Rep. No. 101-538 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3342).  Two subsections of the NLEA, 21 U.S.C. § 343(q) and (r), set forth detailed requirements for nutritional information and claims on food labels.  Pursuant to the NLEA, the FDA has promulgated a comprehensive set of regulations regarding food labeling. *See* 21 C.F.R. §§ 101.1 *et seq.* (2013).

When it passed the NLEA, Congress expressly preempted any state law requirements "not identical" to those established by the NLEA:

> [N]o State . . . may directly or indirectly establish under any authority . . .
>
> (4) any requirement for nutrition labeling of food that is *not identical* to the requirement of section 343(q) of this title . . . or
>
> (5) any requirement respecting any claim of the type described in section 343(r)(1) . . . made in the label or labeling of food that is *not identical* to the requirement of section 343(r) . . . .

21 U.S.C. § 343-1(a)(4), (5) (2012) (emphases added).  Under FDA regulations, "not identical to" means "the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling" that are "not imposed by or contained in the applicable provision [or regulation] . . . or [d]iffer from those specifically imposed by or contained in the applicable provision [or regulation]."  21 C.F.R. § 100.1(c)(4)(i)–(ii); *Lam*, 859 F. Supp. 2d at 1102.

Accordingly, the NLEA preempts state law claims that seek to require food labels to contain information that is not identical to the information required by the NLEA and its implementing regulations.  *See, e.g.*, *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) (Posner, J.) ("Even if the disclaimers that the plaintiff wants added would be consistent with the requirements imposed by the Food, Drug, and Cosmetic Act, consistency is not the test [for NLEA preemption]; identity is."); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010) (same); *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1118 (C.D. Cal. 2010) (same).

- 5 -

Plaintiff's state-law claims based on (i) Mars's calorie-related GDA icons and (ii) statements regarding flavanols are preempted because they seek to impose labeling requirements that are "not identical" to those required by the NLEA and its implementing regulations.

### A.     The NLEA Preempts Plaintiff's Claims Regarding Mars's Calorie-Related GDA Icons.

The NLEA expressly preempts Plaintiff's claim that Mars's products are misbranded because they display GDA icons that state the number of calories and a percent DV of calories based on a 2,000-calorie diet.  Compl. ¶¶ 72–124.  As this Court has already once held, Mars's calorie-related GDA icons "comply with all applicable federal regulations," and "any finding that these claims are unlawful and deceptive would impose requirements not identical to the FDA's regulations."  *Gustavson*, 2013 WL 5201190, at *13.

Plaintiff's amended complaint attempts to renew these claims with a jumbled assortment of allegations which can be fairly categorized into three distinct arguments: (1) calculating a DV of calories violates FDA regulations and is misleading because the FDA has not formally established a DV for calories, Compl. ¶ 78; (2) the GDA icons violate FDA regulations and are misleading because they are not accompanied by a disclosure statement, "see nutrition information for [fat, saturated fat, cholesterol, and/or sodium] content," *id.* ¶¶ 102–104; and (3) the display of a single caloric GDA icon on the principal display panel of Mars's product labels violates the FDA's guidance regarding the voluntary "Nutrition Keys (Facts Up Front)" labeling program, *id.* ¶ 78.  The first two arguments have already been rejected by this Court, *see Gustavson*, 2013 WL 5201190, at *12–13, and Plaintiff's amended complaint proffers no basis for the Court to reconsider that ruling.  Plaintiff's addition of irrelevant allegations regarding the voluntary "Nutrition Keys" labeling program does not change the analysis.  These claims are expressly preempted by federal law and should be dismissed.

### 1.     Percent DV of Calories.

The NLEA preempts Plaintiff's claim that Mars's products are misbranded because they display a percent DV of calories.  Nothing in the FDCA or its implementing regulations prohibits a label from stating a percent DV of calories based on a 2,000-calorie diet.  To the contrary, as

1  this Court has already recognized, "listing a percentage DV based on a 2,000 calorie diet could

2  not possibly be false or misleading within the meaning of the FDA's regulations, because the

3  FDA *itself* uses a 2,000 calorie day baseline to calculate nutrient DVs." *Gustavson*, 2013 WL

4  5201190, at *12.  FDA regulations specify that the percent DVs for certain nutrients *must* be

5  printed on product labels, that those percentages *must* be calculated based on a 2,000 calorie diet,

6  and that the labels *must* state that the percent DVs were calculated based on a 2,000 calorie diet.

7  *See, e.g.*, 21 C.F.R. § 101.9(c)(9) (2013) ("For the purpose of labeling with a percent of the

8  DRV, the following DRV's are established for the following food components *based on the*

9  *reference caloric intake of 2,000 calories*" (emphasis added)), (d)(9)(i) (mandating that nutrition

10  label shall include a footnote stating that "Percent Daily Values are based on a 2,000 calorie

11  diet").  Nothing prohibits a food manufacturer from doing basic math and providing a similar

12  percentage of calories.  In fact, the FDA is currently contemplating *requiring* food manufacturers

13  to provide a percent DV of calories based on a 2,000 calorie diet.  *See* Food Labeling:

14  Prominence of Calories, 70 Fed. Reg. 17,008, 17,008–17,010 (Apr. 4, 2005) (advance notice of

15  proposed rulemaking ("ANPRM") requesting comments on DV of calories and placement of

16  calorie information on principal display panel); Food Labeling: Revision of Reference Values

17  and Mandatory Nutrients, 72 Fed. Reg. 62,149, 62,167 (Nov. 2, 2007) (ANPRM renewing

18  request for comments on FDA's April 4, 2005 "Prominence of Calories" proposal); Regulatory

19  Agenda, 78 Fed. Reg. 44,252, 44,254 (July 23, 2013) (declaring FDA's intent to issue a proposed

20  rule based on FDA's April 4, 2005 and November 2, 2007 ANPRMs).

21       Moreover, FDA regulations expressly authorize that "the label or labeling of a product

22  may contain a statement about the amount *or percentage* of a nutrient if . . . [t]he statement does

23  not in any way implicitly characterize the level of the nutrient in the food and it is not false or

24  misleading in any respect (e.g., '100 calories' or '5 grams of fat')."  21 C.F.R. § 101.13(i)(3)

25  (emphasis added); *see also Gustavson*, 2013 WL 5201190, at *12.  A percent DV of calories

26  complies with 21 C.F.R. § 101.13(i)(3) because it is (1) a "percentage," (2) of a "nutrient," (3)

27  that does not "implicitly characterize the level" of that nutrient, and (4) is not "false or

28  misleading."  Providing a percent DV of calories "do[es] not implicitly characterize the *level* of

- 7 -

calories in the products (in that they do not imply, for instance, that the products are low calorie)."  *Gustavson*, 2013 WL 5201190, at *12; *see also* Food Labeling: Nutrient Content Claims, 58 Fed. Reg. 2302, 2310 (Jan. 6, 1993) (explaining that statements like "100 calories" or "5 grams of fat" are "a simple statement of amount that, by itself, conveys no implied characterization of the level of the nutrient").  And the percentage is not misleading because it is calculated using the same caloric baseline the FDA uses to calculate all other nutrient DVs and is always accompanied by disclosure of all of the information used to calculate that percentage: (1) the numerator (calories per measured serving), the denominator (a 2,000 calorie diet), and the size of the serving being measured (e.g., an individually wrapped package).  *See* RJN Exs. A–E. Thus, as this Court has already once held, providing a percent DV of calories is expressly authorized by 21 C.F.R. § 101.13(i)(3).

### 2.      Disclosure Statement

Plaintiff's Complaint also renews the allegation that Mars's GDA icons violate 21 C.F.R. § 101.13(h)(1) because they are not accompanied by a disclosure statement, "see nutrition information for [fat, saturated fat, cholesterol, and/or sodium] content."  Compl. ¶¶ 102–104. But as this Court has already held, Plaintiff's argument contradicts the plain language of 21 C.F.R. § 101.13(i)(3), which "contains no such [disclosure statement] requirement."  *Gustavson*, 2013 WL 5201190, at *12.  Section 101.13(i)(3) states that a label "*may contain*" a statement about the amount or percentage of a nutrient "*if* . . . [t]he statement does not in any way implicitly characterize the level of the nutrient in the food *and* [] is not false or misleading in any respect."  *Id.* (alterations in original) (emphases added) (internal quotation marks omitted).   It does *not* require that the amount or percentage be accompanied by a disclosure statement.

### 3.      The "Nutrition Keys (Facts Up Front)" Labeling Program

Finally, in an attempt to resuscitate her claims premised on Mars's calorie-related GDA icons, Plaintiff peppers her Complaint with allegations that Mars has "failed to adhere to the guidelines of the Nutrition Keys (Facts Up Front) voluntary labeling program."  Compl. ¶ 78. But as Plaintiff herself admits, the Nutrition Keys is a *voluntary* labeling program developed by

two private organizations—the Grocery Manufacturers Association ("GMA") and the Food Marketing Institute ("FMI").  *Id* ¶ 75; *see also* RJN Ex. F (Dec. 13, 2011 FDA letter describing Nutrition Keys as a "voluntary labeling program").  It is not a regulation, and the fact that the FDA has written a guidance letter regarding a voluntary labeling program invented by industry groups does not obligate food manufacturers to join or follow that program.  Mars, an industry leader in front-of-pack nutrition labeling, introduced its GDA icon program several years before the Grocery Manufacturers Association proposed the "Nutrition Keys" program.  The only relevant question is whether Mars's calorie-related GDA icons comply with the NLEA and applicable FDA regulations—not whether they are identical to the Nutrition Keys.

Moreover, Mars's GDA icon program is consistent with the guidance provided by the FDA on front-of-pack labeling.  The FDA's letter regarding the Nutrition Keys does not state that front-of-pack labeling violates the NLEA or FDA regulations unless it follows the Nutrition Keys program.  *See* RJN Ex. F.  Plaintiff alleges that the GDA icons program is inconsistent with the Nutrition Keys guidance because it only displays a calorie icon—and not all four Nutrition Keys icons—on the front of the package.  *See* Compl. ¶ 80.  But the Nutrition Keys style guide approved by the FDA *specifically permits* the use of a single calorie icon on the principal display panel for smaller products.  *See* RJN Ex. I at 17 ("Nutrition Keys" Final Draft Style Guide for Implementers (May 3, 2011)).  Moreover, the FDA's stated concern that all four icons be printed on the front of the package was simply to ensure that the information on the front of the package is "standardized" and "non-selective" so that it does not "mislead consumers by presenting only 'good news' about nutrient content."  RJN Ex. F.  As Plaintiff's own allegations in this action demonstrate, Mars's use of the calorie icon (as well as its other GDA icons) is standardized and non-selective across its entire product line.  *See* RJN Exs. A–E.  Here, Mars's non-selective presentation of quantitative calorie information regarding its candy products fully complies with FDA regulations, can hardly be considered "good news," and is clearly not misleading in any sense.

Indeed, a recently passed law requiring disclosure of calorie information by vending machine operators illustrates the absurdity of Plaintiff's argument.  The Patient Protection and

- 9 -

Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010), codified as amended at 21 U.S.C. § 343(q), requires vending machine operators to "provide a sign in close proximity to each article of food or the selection button *that includes a clear and conspicuous statement disclosing the number of calories contained in the article.*"  21 U.S.C. § 343(q)(5)(H)(viii)(I)(bb) (emphasis added).  The regulation proposed by the FDA to implement this statute specifically exempts foods that "provide[] visible nutrition information at the point of purchase" in the form of the "total number of calories for the article of food."  Food Labeling; Calorie Labeling of Articles of Food in Vending Machines, 76 Fed. Reg. 19,238, 19,238–39, 19,254 (Apr. 6, 2011). In order to qualify for the exemption, the calorie information "must appear on the food label itself," "must be clear and conspicuous and easily read on the article of food while in the vending machine," and must have "sufficient color and contrasting background to other print on the label to permit the prospective purchaser to clearly distinguish the information."  *Id.* at 19,254.  The FDA has specifically acknowledged that "front of package" nutrition information voluntarily placed on the label is a way to satisfy this requirement, "so long as the criteria for color, font and type size are met *and total calories in the article of food are included*."  *Id.* at 19,244 (emphasis added).  Mars candy is frequently sold via vending machines, and it is hard to see how Congress and the FDA could mandate that vending machine operators provide a "clear and conspicuous statement" disclosing caloric information directly on or in "close proximity" to Mars's products, but at the same time deem that information misleading when voluntarily provided by Mars.

In sum, Mars's GDA icons "comply with all applicable federal regulations, [and] any finding that these claims are unlawful and deceptive would impose requirements not identical to the FDA's regulations."  *Gustavson*, 2013 WL 5201190, at *13.  Plaintiff's claims to the contrary are expressly preempted by the NLEA and must be dismissed.

### B. The NLEA Preempts Plaintiff's Claims Based on Statements About the Presence of Flavanols in Cocoa.

Plaintiff's amended complaint also renews her allegations that statements on the Dove Dark Chocolate label describing cocoa as a "natural source" of flavanols and stating that "the COCOAPRO® process helps retain much of the naturally occurring cocoa flavanols" violate

FDA regulations.  Compl. ¶¶ 57–71, 159.  According to the complaint, these statements are "nutrient content claims" that "characterize the level" of flavanols in the product and must comply with 21 C.F.R. § 101.54(g).  *See* Compl. ¶ 58.  But contrary to Plaintiff's contention, these statements are *not* "nutrient content claims" because they do not "characterize the level" of flavanols.

Under the FDCA, a statement on a food label that "expressly or by implication . . . characterizes the level of any nutrient which is of the type required" by the FDCA to be listed on the nutrition label "may be made only if the characterization of the level . . . uses terms which are defined in" FDA regulations.  21 U.S.C. § 343(r)(1)(A), (r)(2)(A)(i).  Pursuant to this provision, the FDA has promulgated regulations governing "nutrient content claims"—defined as "[a] claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36."  21 C.F.R. § 101.13(b).  Under 21 C.F.R. § 101.54(g), "[a] nutrient content claim that characterizes the level of antioxidant nutrients present in a food" may not be made on a label unless "[a]n RDI has been established for each of the [antioxidant] nutrients" and the claim complies with the criteria for making a "high," "good source," or "more" claim under subsections (b), (c), or (e) of the regulation.

In *Trazo v. Nestle USA, Inc.*, Judge Grewal recently held that state law claims based on the use of the phrase "natural source of antioxidants" on dark chocolate products are expressly preempted by federal law.  *See* No. 5:12-CV-2272 PSG, 2013 WL 4083218, at *9 (N.D. Cal. Aug. 9, 2013).  According to Judge Grewal, "these statements do not 'characterize the level' of the antioxidants, and thus are not nutrient content claims as defined in Section 101.54."  *Id.* (alteration omitted).  That is because "[t]he qualifier 'natural,' unlike 'good,' 'excellent,' and [']fine,' does not modify the word 'source' to indicate the level of the ingredient."  *Id.* (footnote omitted).

Just like in *Trazo*, the statements on the Dove Dark Chocolate label do not "characterize[] the level" of flavanols in the product and are therefore not nutrient content claims subject to the limitations imposed by 21 C.F.R. § 101.54(g).  They are not "expressed nutrient content claim[s]" because they do not make any "direct statement about the level (or range)" of flavanols

- 11 -

in the product—e.g., they do not state that the product is a "good," "excellent," or "fine" source of flavanols. *Id.* § 101.13(b)(1); *Trazo*, 2013 WL 4083218, at *9. They are not implied nutrient content claims because they do not either (i) "[d]escribe[] the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high in oat bran')"; or (ii) "[s]uggest[] that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat')." 21 C.F.R. § 101.13(b)(2)(i)-(ii). A statement that the product is a "natural source" of cocoa flavanols does not describe "the *food* or an *ingredient*"—flavanols are neither a food nor an ingredient—and it does not suggest that flavanols are "absent or present in a *certain amount*," such as at a high, low, or moderate level. *Id.* § 101.13(b)(2)(i) (emphases added). Likewise, "natural source of cocoa flavanols" is not a representation that Dove Dark Chocolate "may be useful in maintaining healthy dietary practices" paired with a separate, "explicit claim or statement" about cocoa flavanols. *Id.* § 101.13(b)(2)(ii). Rather, these statements do no more than inform consumers that cocoa flavanols are naturally present in the product—a truthful statement—without making any "characterizations" about the actual "level" of cocoa flavanols in the product.[4] *See Trazo*, 2013 WL 4083218, at *9.

Plaintiff's complaint confuses this issue by claiming that the terms "source" and "occurring" are synonyms of the regulatory terms "contains" and "provides" that are specified in the definition of a "good source" claim under 21 C.F.R. § 101.54(c). *See* Compl. ¶ 61. That is not how the regulation works. 21 C.F.R. § 101.54(b), (c), and (e) define three specific types of nutrient content claims: "high," "good source," and "more." Each subsection sets out specific criteria that must be met in order to make a "high," "good source," or "more" claim. For example:

---

[4] Plaintiff admits this fact when she alleges that the statements are "an undefined characterization that a nutrient is found in a food *at some undefined level*." Compl. ¶ 64 (emphasis added).

- A "high" claim can be made only if the food "contains 20 percent or more of the RDI or the DRV per reference amount customarily consumed" for that nutrient, 21 C.F.R. § 101.54(b)(1);

- A "good source" claim can be made only if the food "contains 10 to 19 percent of the RDI or the DRV per reference amount customarily consumed" for that nutrient, *id.* § 101.54(c)(1);

- A "more" claim can be made only if the food "contains at least 10 percent more of the RDI for vitamins or minerals or of the DRV for protein, dietary fiber, or potassium . . . per reference amount customarily consumed than an appropriate reference food," *id.* §101.54(e)(1)(i).

Each of subsections (b), (c), and (e) also lists the specific regulatory synonyms for "high," "good source," and "more."  There are two defined regulatory synonyms for "good source": "contains" and "provides."  *Id.* § 101.54(c)(1).  It is important to note that these are FDA-established *regulatory* synonyms, not true English-language synonyms; they are deemed synonyms *because* the FDA has said they are synonyms, not because they are synonyms in any ordinary sense. "Contains" and "provides" are the *only* defined regulatory synonyms for a "good source" claim. "Source" and "occurring" are *not* defined synonyms for a "good source" claim.

Because "natural source" and "naturally occurring" are not defined synonyms of "good source," the "good source" regulation does not apply.  As Judge Grewal observed in *Trazo*, the FDA regulation governing references to antioxidants "plainly applies to the terms 'good source,' 'contains,' and 'provides,' *without providing for inclusion of similar or lesser included terms*." 2013 WL 4083218, at *6 (emphasis added) (quoting 21 C.F.R. § 101.54(c)).  Under the doctrine of *expressio unius est exclusio alterius*, "a specific, finite list implies that other terms are excluded."  *Id.* (citing *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005)). Thus, "natural source" and "naturally occurring" are unequivocally *not* "good source" claims, and the only relevant question here is whether these statements "characterize the level" of flavanols in the product.

Other than misplaced reliance on the "good source" regulation, Plaintiff's sole basis for alleging that "natural source" and "naturally occurring" constitute nutrient content claims is to quote a letter from the FDA's New England District Office to a producer of clover sprouts.  *See*

- 13 -

Compl. ¶ 62; RJN Ex. H (Mar. 24, 2011 FDA warning letter to Jonathan's Sprouts).  Because it is an informal agency warning letter and not a formal rule or adjudicatory order, the warning letter's interpretation of the FDCA is not binding on this Court and is only entitled to *Skidmore* deference "proportional to its 'power to persuade.'"  *United States v. Mead Corp.*, 533 U.S. 218, 227–35 (2001) (alteration omitted).  The letter's interpretation of the FDCA is not persuasive for two reasons.

First, concluding that the terms "natural source" and "naturally occurring" constitute nutrient content claims would render superfluous the words "characterizes the level" in the statutory (and regulatory) definition of nutrient content claims.  *See* 21 U.S.C. § 343(r)(A); 21 C.F.R. §§ 101.13(b), 101.54 (g).  "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."  *Corley v. United States*, 556 U.S. 303, 314 (2009) (internal quotation marks omitted).  Holding that the words "natural source" or "naturally occurring" are "characterizing" would render it impossible to say *anything* about a nutrient without "characteriz[ing] the level" of that nutrient.  In effect, the Jonathan's Sprouts warning letter reads the words "characterizes the level" right out of the FDCA and the FDA's implementing regulations, making them "superfluous, void, [and] insignificant."  *See id.* at 314.

Second, the Jonathan's Sprouts warning letter is inconsistent with the plain language of the FDA's own regulations.  The FDA's decision *not* to include the terms "source" or "occurring" in its definition of a "good source" claim—particularly where it has defined and restricted the use of the term "*good* source"—suggests that the terms do *not* "characterize the level" of the nutrients they describe.  Indeed, the Jonathan's Sprouts warning letter conflicts with at least one prior, considered FDA statement on this issue.  *See* 58 Fed. Reg. at 2345 ("[T]he term 'source' *merely connotes that a nutrient is present but does not signify the quantity present*." (emphasis added)).  Under these circumstances, a lone paragraph in a single warning letter from an FDA branch office—to Mars's knowledge the only instance in which the FDA has *ever* suggested that the word "source" characterizes the level of a nutrient—is not entitled to deference.

- 14 -

For these reasons, the Court should not defer to the interpretation of the FDCA articulated in the Jonathan's Sprouts warning letter.  *See Wilson v. Frito-Lay N. Am., Inc.*, No. 12-1586 SC, --- F. Supp. 2d ----, 2013 WL 5777920, at *6 (N.D. Cal. Oct. 24, 2013) (declining to defer to "two warning letters that the FDA sent to two other companies" because the interpretation was inconsistent with regulatory language and FDA guidance).  Rather, this Court should follow the reasoning in *Trazo* and hold that the statements on the Dove Dark Chocolate label are not nutrient content claims and are not required to use FDA-defined terms.  To the extent Plaintiff purports to claim otherwise, her claims are preempted because they would impose obligations that are "not imposed by or contained in" the FDCA or FDA regulations.  21 C.F.R. § 100.1(c)(4)(i) (2012).

## II.    This Court Should also Dismiss Plaintiff's Claims Regarding Mars's Calorie-Related GDA Icons Under the Primary Jurisdiction Doctrine.

Apart from express preemption, there is an additional, independent basis for dismissing the claims premised on Mars's calorie-related GDA icons: they fall squarely within the primary jurisdiction of the FDA.  Front-of-pack calorie-related labeling is an issue of first impression that is currently under active consideration by the FDA.  Under these circumstances, this Court should defer to the FDA and—as it previously did with respect to the serving size of small breath mints—hold that the "more prudent" course is "to step back and allow the FDA regulatory process to play out." *Gustavson*, 2013 WL 5201190, at *17.

"The primary jurisdiction doctrine 'allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency.'"  *Id.* at *16 (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)).  The doctrine applies when: "(1) there is a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id* . (internal quotation marks and brackets omitted).  Although the doctrine "does not require that all claims within an agency's purview be decided by the agency," the doctrine "is properly invoked when a

- 15 -

1   claim is cognizable in federal court but requires resolution of an issue of first impression, or of a

2   particularly complicated issue that Congress has committed to a regulatory agency." *Id.* (internal

3   quotation marks omitted).  It is "designed to protect agencies possessing 'quasi-legislative

4   powers' and that are 'actively involved in the administration of regulatory statutes.'" *Clark*, 523

5   F.3d at 1115 (citation omitted).

6          Numerous courts have invoked primary jurisdiction to dismiss claims raising issues of

7   first impression that are under active consideration by an administrative agency.  For example, in

8   *Gordon v. Church & Dwight Co.*, the court dismissed, on primary jurisdiction grounds, claims

9   alleging that a manufacturer of "N9" latex condoms misrepresented that the condoms reduced

10  the spread of sexually transmitted disease.  *See* No. C 09-5585, 2010 WL 1341184 (N.D. Cal.

11  Apr. 2, 2010).  The court found it persuasive that "the FDA has stated that it is still considering

12  public comments and other data in connection with warnings similar to those that plaintiffs seek

13  to have the court impose." *Id.*  Under those circumstances, "[i]t would be inappropriate for this

14  court to assume the FDA's regulatory role, and to interpret scientific studies or other evidence to

15  determine whether the labeling of N9 latex condoms should be changed to include an additional

16  warning." *Id.; see also Clark*, 523 F.3d at 1115–1116 (deferring to FCC on issue of first

17  impression regarding Voice over Internet Protocol (VoIP) because FCC Notice of Proposed

18  Rulemaking indicated "that the agency is actively considering how it will regulate VoIP services

19  and that the agency's development of a uniform regulatory framework to confront this emerging

20  technology is important to federal telecommunications policy").

21         This Court has also recently dismissed, on primary jurisdiction grounds, claims alleging

22  violations of FDA food labeling regulations that involve issues of first impression being actively

23  regulated by the FDA.  In its order on Wrigley's previous motion to dismiss, this Court

24  dismissed Plaintiff's claim based on the serving size of Altoids Smalls, reasoning that the fact

25  that the FDA had issued a proposed rule on the issue indicated a "substantial possibility that the

26  FDA may soon change its breath mint serving requirements." *Gustavson*, 2013 WL 5201190, at

27  *17.  Similarly, in *Kane v. Chobani, Inc.*, this Court dismissed on primary jurisdiction grounds

28  the claim that Chobani's use of the ingredient described as "evaporated cane juice" violated the

- 16 -

standard of identity for yogurt, relying on the fact that the FDA "has proposed a new Standard of Identity for Yogurt that allows 'safe and suitable sweetening ingredients'" and has "suggested that it will not enforce violations of the current Standard of Identity if companies comply with the proposed one.'" No. 12-CV-02425-LHK, 2013 WL 3703981, at *18 (N.D. Cal. July 12, 2013) (citation omitted), *vacated for other reasons by* 2013 WL 5529723 (N.D. Cal. July 25, 2013). Under those circumstances, deferring to the FDA was appropriate "[g]iven the possibility that the FDA will soon change the Standard of Identity for Yogurt to permit the use of [evaporated cane juice] and the indications that the FDA will not bring claims against manufacturers who comply with the proposed revised Standard of Identity." *Id.*

Plaintiff's claims based on Mars's GDA icons are another example of an issue of first impression on which this Court should defer to the FDA's primary jurisdiction. The best evidence of this is Plaintiff's own allegations in her renewed complaint, which rely extensively on a non-binding FDA guidance letter in which the FDA (i) specifically approved the use of front-of-pack calorie icons similar to those used by Mars and (ii) stated it would "exercise enforcement discretion" regarding front-of-pack nutrition labeling. *See* RJN Ex. F. Moreover, the FDA has announced that it "soon will propose guidance for the industry regarding nutrition labeling on the front of food packages, and plans to work collaboratively with the food industry to design and implement innovative approaches to front-of-package labeling that can help consumers choose healthy diets." RJN Ex. G (FDA announcement of "Front-of-Package Labeling Initiative"). un[5] In fact, with regard to calorie-related labeling specifically, the FDA is currently contemplating a proposal which would "give more prominence to calories on the food label" and would *require* the inclusion of a daily value of calories (based on a 2,000 calorie diet) as a standard component of the nutrition facts panel. *See* 70 Fed. Reg. 17,008, 17,008–17,010;

---

[5] *Available at*
http://www.fda.gov/Food/IngredientsPackagingLabeling/LabelingNutrition/ucm202726.htm (last updated May 17, 2013).

72 Fed. Reg. 62,149, 62,167; 78 Fed. Reg. 44,252, 44,254.  And as previously noted, proposed FDA regulations condone the provision of "clear and conspicuous" front-of-pack calorie information as a way to satisfy Affordable Care Act vending-machine nutrition disclosure requirements.  *See supra* Part I.A.3.

In short, front-of-pack nutrition labeling and the disclosure of calorie-related information are areas in which the FDA is "actively involved in the administration of regulatory statutes," *see Clark*, 523 F.3d at 1115 (internal quotation marks omitted), is "still considering public comments and other data," *see Gordon*, 2010 WL 1341184, at *2, and is intentionally exercising enforcement discretion, *see Kane*, 2013 WL 3703981, at *18.  Plaintiff's claims that Mars's GDA icons are inconsistent with FDA regulations raise clear "technical and policy questions" "that should be addressed in the first instance" by the FDA to ensure "uniformity in administration."  *Clark*, 523 F.3d at 1114–15 (internal quotation marks omitted).  To hold otherwise would risk stifling the very "design and implement[ation of] innovative approaches to front-of-package labeling" in which the FDA is currently engaged.  RJN Ex. G.

## CONCLUSION

For the foregoing reasons, and pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff's claims based on Mars's calorie-related GDA icons and statements regarding cocoa flavanols should be dismissed with prejudice.

Dated:  November 15, 2013                    Respectfully submitted,


                                             By: */s/ Stephen D. Raber*
                                             Stephen D. Raber (State Bar No. 121958)
                                             David M. Horniak (State Bar No. 268441)
                                             WILLIAMS & CONNOLLY LLP
                                             725 Twelfth Street, N.W.
                                             Washington, DC  20005
                                             Telephone:  (202) 434-5000
                                             Fax:  (202) 434-5029
                                             E-mail:  sraber@wc.com
                                             E-mail:  dhorniak@wc.com

- 18 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Ben F. Pierce Gore                    pgore@prattattorneys.com

And I hereby do certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

J. Price Coleman
Coleman Law Firm
1100 Tyler Avenue, Suite 102
Oxford, MS 38655

Dated:  November 15, 2013                    Respectfully submitted,


                                        By: */s/ Stephen D. Raber*
                                        Stephen D. Raber (State Bar No. 121958)
                                        David M. Horniak (State Bar No. 268441)
                                        WILLIAMS & CONNOLLY LLP
                                        725 Twelfth Street, N.W.
                                        Washington, DC  20005
                                        Telephone:  (202) 434-5000
                                        Fax:  (202) 434-5029
                                        E-mail:  sraber@wc.com
                                        E-mail:  dhorniak@wc.com

                                        *Attorneys for Defendants*