Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

J. Price Coleman (*Pro Hac Vice*)
Coleman Law Firm
1100 Tyler Avenue, Suite 102
Oxford, MS 38655
Telephone: (662) 236-0047
Facsimile: (662) 513-0072
colemanlawfirmpa@bellsouth.net

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PHYLLIS GUSTAVSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARS, INC. AND MARS CHOCOLATE NORTH AMERICA, LLC<br>Defendants. | Case No. 13-cv-04537-LHK<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS MARS INC. AND MARS CHOCOLATE NORTH AMERICA, LLC'S MOTION TO STAY**<br><br>Hearing Date: December 11, 2014<br>Time: 1:30 p.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh |

**TABLE OF CONTENTS**

STATEMENT OF THE ISSUES TO BE DECIDED ................................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES.............................................................. 1

I. INTRODUCTION ................................................................................................................1-2

II. FACTUAL ALLEGATIONS ..............................................................................................2-6

III. LEGAL STANDARD………………………………………………………………..6-7

IV. ARGUMENT .....................................................................................................................7-13

    A. The Disposition of the Appeal in the *Jones* Action Will Not Be Binding Upon This Court in Considering Issues Unique to This Case………………………………7-8

    B. Plaintiff Will Be Prejudiced By Any Delay of This Case…………………..………8-9

    C. Defendants Will Not Be Prejudiced By Proceeding with This Case While the *Jones* Appeal Is Pending……………………………………………………………………9

    D. Judicial Economy Will Be Served By Denying Defendants' Stay Request……….9-10

    E. The Interest of Persons Not Parties to This Litigation Will Be Better Served By Denying Defendants' Stay Request…………………………………………………….10

    F. Defendants' Motion to Stay is Premature……………………………………………..10-11

    G. The Regression Model for Calculating Class-Wide Damages Being Considered in the *Jones* Appeal Is Different From the Model Which Will Likely Be Presented In This Case…………………………………………………………..11-12

IV. CONCLUSION ..................................................................................................................12-13

# TABLE OF AUTHORITIES

## CASES

*Brazil v. Dole Packaged Foods, LLC*,
   No. 5:12-cv-01831, 2014 WL 2466559 (N.D. Cal. May 30, 2014)…1, 2, 5, 6-12

*Clinton v. Jones*,
   520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997)……………………………..7

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015, 1028-1029 (9th Cir. Cal. 2012)……………………………………….7, 8

*Grubbs v. Irey*,
   2008 U.S. Dist. LEXIS 26758, 2008 WL 906246, at *1 n. 5 (E.D. Cal. March 31, 2008)……………………………………………………………………………………..7

*Gustavson v. Mars, Inc.*,
   No. 13-cv-04537, 2014 WL 2604774 (N.D. Cal. October 14, 2014)..............................1, 2, 5

*Gustavson v. Wrigley Sales Co.*,
   961 F. Supp. 2d 1100, 1112-13 (N.D. Cal. 2013) ..................................................................2

*Jones v. ConAgra Foods, Inc.*,
   No. 3:12-cv-01633, 2014 WL 2702726 (N.D. Cal. Jan. 15, 2013)………………3, 5, 6-12

*Jones v. ConAgra Foods, Inc.*,
   No. 14-16327 (9th Cir. filed July 28, 2014)…………………………………1, 2, 3, 5, 6-12

*Keating v. Office of Thrift Supervision*,
   45 F.3d 322, 325 (9th Cir. 1995)……………………………………………………….7-12

*Landis v. North American Co.*,
   299 U.S. 248, 254, 81 L. Ed. 153, 57 S. Ct. 163 (1936)…………………………………..6

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098, 1110 (9th Cir. Cal. 2005)…………………………………………………7

*Sec. & Exch. Comm'n v. Dresser Indus., Inc.*,
   628 F.2d 1368, 1375, 202 U.S. App. D.C. 345 (D.C. Cir. 1980)…………………………7

*Werdebaugh v. Blue Diamond Growers,*
   No. 5:12-cv-02724, 2014 WL 2191901 (N.D. Cal. May 23, 2014)  .................... 1, 2, 5, 6-12

## **Statutes and Regulations**

Cal. Bus. & Prof. Code §§17200 *et seq*.,………………………………………………………3

Cal. Bus. & Prof. Code §§ 17500 *et seq*……………………………………………………….3, 4

Cal. Civ. Code §§ 1750 *et seq*..................................................................................................3, 4

Federal Rule of Civil Procedure 23(b)(2)………………………………………………………..4

Federal Rule of Civil Procedure 23(b)(3)………………………………………………….4, 6-12

# STATEMENT OF ISSUES TO BE DECIDED

## CIVIL L.R. 7-4(a)(3)

1. Whether the Court should deny the Defendants' Motion to Stay the *Gustavson* action which is based on the pending Ninth Circuit appeal in the factually distinguishable *Jones v. ConAgra* case that addresses different issues and questions of law from the *Gustavson* action?

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Phyllis Gustavson (hereinafter "Plaintiff") submits this memorandum in opposition to the Motion to Stay filed by Defendants Mars, Inc. and Mars Chocolate North America, LLC (collectively "Mars" or "Defendants"). Defendants filed a Motion to Stay the current action, *Gustavson v. Mars, Inc.*, No. 13-CV-04537, 2014 WL 2604774 (N.D. Cal. October 14, 2014) based on the pendency of an appeal to the Ninth Circuit Court of Appeals, *Jones v. ConAgra Foods, Inc.*, No. 14-16327 (9th Cir. filed July 28, 2014).[1]

Contrary to Defendants' position, the *Jones* appeal will offer no new guidance to this Court on the issues of whether the Plaintiff has offered a viable damages model, or ascertainability, that is, whether potential class members can reasonably recall if and when they purchased certain products with specific label claims that appear to have been the same throughout the class period.. The facts in the *Jones* case have critical distinctions from the current action because the *Jones* case concerned three separate lines of products (Swiss Miss Cocoa, PAM cooking spray, and Hunts tomato products) with varying label claims at varying times pre- and post- class period.  From what Plaintiff in the current action has learned from discovery thus far, the line of products in the *Gustavson* action has had the same unlawful label claims since 2008, making the analysis on ascertainability more similar to the analysis from this Court's class certification rulings in *Werdebaugh v. Blue Diamond Growers*, No. 5:12-cv-02724, 2014 WL 2191901 (N.D. Cal. May 23, 2014) and *Brazil v. Dole Packaged Foods, LLC*, No. 5:12-cv-01831, 2014 WL 2466559 (N.D. Cal. May 30, 2014).

Further, the regression analysis damages model that will likely be utilized in the *Gustavson* action will be the same regression analysis model used to calculate class-wide damages in both the *Werdebaugh* and *Brazil* actions, which differs from the damage model used in Jones. The Ninth Circuit's decision in *Jones* will not resolve issues relating to ascertainability and damages that this

---

[1]   While Appellants have filed a notice of appeal in *Jones* the issues on appeal have not been established and Appellants' opening brief is not due until November 21, 2014. Appellee ConAgra Foods, Inc.'s Answering brief is due on December 22, 2014, with the optional Reply brief being due 14 days after, or January 5, 2014.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS MARS, INC. AND MARS CHOCOLATE NORTH AMERICA, LLC'S MOTION TO STAY
CASE NO. 13-CV-04537-LHK

1

Court will face in deciding Plaintiff's Motion for Class Certification. This Court, in its discretion, has applied its damages and ascertainability analysis in both *Werdebaugh* and *Dole*, which like *Gustavson*, involved product lines that experienced no label changes during the class period and utilized a regression analysis damages model to calculate damages on a class-wide basis. In the *Jones* case, Judge Breyer given the facts before him exercised his discretion in denying the Motion for Class Certification on the ascertainability and damages elements of class certification. He also denied the motion on other elements. Thus, the issues the Ninth Circuit will review in *Jones* do not involve questions of law similar to *Gustavson* but instead whether or not Judge Breyer with the facts before him in that case abused his discretion in denying class certification. For these reasons, the Court should deny Defendants' Motion to Stay in its entirety

## II. FACTUAL ALLEGATIONS

**A.    There Are Numerous Legal and Factual Distinctions Between the *Gustavson* Action and the *Jones* Action Which Warrant the Denial of a Stay**

### 1.    The *Gustavson* Action

The original Complaint in this case was filed by Plaintiff Phyllis Gustavson against Wrigley Sales Company, WM. Wrigley, Jr. Company, Mars Inc., and Mars Chocolate North America, LLC under cause number 12-CV-01861-LHK (hereinafter "Mars/Wrigley Complaint"). *See Gustavson v. Wrigley Sales Co*., 961 F. Supp. 2d 1100, 1112-13 (N.D. Cal. 2013). Wrigley and Mars filed motions to dismiss the complaint in the Wrigley case, which the Court granted in part and denied in part on September 16, 2013. *See id*. After stipulation by the parties, the Court ordered on September 26, 2013 that the claims against the Wrigley Defendants and the Mars Defendants be severed into two cases and that new complaints be filed against the Defendants. (Dkt. No. 70, No. 12-CV-01861-LHK). Plaintiff's severed complaint against the Mars Defendants (hereinafter the "Complaint") was filed on October 1, 2013 and assigned Cause Number 13-CV-04537 LHK. Defendants moved to dismiss the Complaint on November 15, 2013. (Dkt. No. 18). Plaintiff opposed the Motion on December 23, 2013. (Dkt. No. 22). Defendant replied on January 17, 2014. (Dkt. No. 28). This Court denied Defendants' Motion to Dismiss in its entirety. (Dkt. No. 31).

Plaintiff in this action alleges that Mars has made the following unlawful and misleading

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS MARS, INC. AND MARS CHOCOLATE NORTH AMERICA, LLC'S MOTION TO STAY
CASE NO. 13-CV-04537-LHK

2

claims on its misbranded food products: (1) flavanol nutrient content claims (Complaint ¶¶ 57-71,157-162); (2) calorie-related nutrient content claims (Complaint ¶¶ 72-124, 143-172 ; and (3) failing to call product ingredients by common names (Complaint ¶¶ 125-142, 151-156). Based on these allegations, Plaintiff asserts six causes of action under California's Unfair Competition Law (Cal. Bus. & Prof. Code §§17200 *et seq.*), False Advertising Law (Cal. Bus. & Prof. Code §§ 17500 *et seq*), and Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*) (Complaint ¶¶ 211-267).

Defendant has recently responded to Interrogatories and Requests for Production of Documents and the actual electronic production of documents has begun. Discovery thus far demonstrates that the primary unlawful claim is the calorie related claim that is made on all Mars chocolate products across all product lines. This claim was first placed on the packages of Mars products beginning in 2008 and has continued to the present day. See, Decl. J. Price Coleman. This is in stark contrast to the facts Judge Breyer was faced with in the *Jones* Action.

**2.     The *Jones* Action**

On April 2, 2012, Plaintiffs Levi Jones, Christine Sturges, and Edd Ozard, on behalf of themselves and others similarly situated, filed a class action suit alleging that Defendant ConAgra's website and products—including Hunt's tomato products, PAM cooking spray products, and Swiss Miss hot cocoa products—contain deceptive and misleading information. *See* Complaint (Dkt. 1), *Jones v. ConAgra Foods, Inc.*, No. 3:12-cv-01633, 2014 WL 2702726 (N.D. Cal. Jan. 15, 2013).

Plaintiffs filed a First Amended Complaint on July 2, 2012. *See Id*. generally FAC (Dkt. 27). On December 17, 2012, the Court granted in part Defendant's Motion to Dismiss the FAC. *See Id*. generally Order Granting In Part MTD (Dkt. 91).

On January 15, 2013, Plaintiffs filed a Second Amended Complaint, alleging unlawful, unfair, and fraudulent business acts and practices in violation of California Business and

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS MARS, INC. AND MARS CHOCOLATE NORTH AMERICA, LLC'S MOTION TO STAY
CASE NO. 13-CV-04537-LHK

3

1    Professions Code section 17200 ("UCL"), (2) misleading, deceptive, and untrue advertising in

2    violation of California Business and Professions Code section 17500 ("FAL"), (3) violations of the

3    Consumers Legal Remedies Act ("CLRA"), and (4) restitution based on unjust enrichment. *See Id.*

4    SAC (Dkt. 95) ¶¶ 255-321.

5        Plaintiffs later moved to certify a PAM cooking spray class in December of 2013, but the

6    Court directed Plaintiffs to move for class certification of all three product lines at the same time.

7    *Id.* at Minutes (Dkt. 183). Plaintiffs moved to certify three separate classes under

8    Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3)–one for each type of food product at

9    issue. *See Id*. generally PAM Mot. (Dkt. 128); Hunt's Mot. (Dkt. 189); SM Mot. (Dkt. 190). The

10   Order on the Motion for Class Certification addressed all three motions. (Dkt. 229). Concerning

11   PAM cooking spray, the Court found that the plaintiff had standing, but denied class certification

12   primarily on ascertainability grounds because the PAM label had changed several times during the

13   class period and the Court held that it would be impossible for class members to accurately recall

14   whether they had made purchases of PAM and which label had been on the product when it was

15   purchased. *Id.* at 22.  The Court also held that common issues did not predominate because the

16   motivation for purchasing PAM would have varied from consumer to consumer. *Id.* at 35.  Finally,

17   the Court rejected the damages analysis of the plaintiff because it was of the opinion that it would

18   be impossible to establish damages on a class-wide basis using any of the methodologies set forth

19   by plaintiff's expert.[2]  *Id.* at 42.

20       As to Hunt's tomato products, the Court's analysis was substantially the same.  The plaintiff

21   had standing to pursue her claims because an adequate showing was made that she had read and

22   relied upon the label.  (Dkt. 229 at pp. 8-9).  For this same reason, the plaintiff also was typical of

23   the absent class members.  *Id.* at 13.  As it had done with PAM products, the Court conducted a

24   thorough analysis of the ascertainability of the proposed class.  The Court again adopted a

---

[2]    It is important to note, in this regard, that the economic expert of the plaintiff, Dr. Oral Capps, Jr., was not proposing a regression analysis based upon hedonic factors in the ConAgra case.  In ConAgra, Dr. Capps only set forth a basic regression analysis based upon label changes of the various products at issue in the case.  This factor will be further discussed in Section G of this brief.

1   restrictive view of the ascertainability question and stated that "it is hard to imagine that
2   [consumers] would be able to remember which particular Hunt's products they purchased from
3   2008 to the present, and whether those products bore the challenged label statements."  *Id.* at 19.
4   Therefore, the Court found that the proposed class was not ascertainable.  The Court found that
5   individual issues predominated because different purchasers may have had different reasons for
6   purchasing Hunt's products and given different weight to the label statements on the products.  *Id.*
7   at 31-32.  The Court rejected the proposed damages methodologies for the same reason that it had
8   rejected them in analyzing the PAM products. *Id.* at 37-39.
9        As to Swiss Miss, the Court's analysis was the same, with the additional finding that the
10  plaintiff did not have standing, and was not typical of the proposed class, because she testified that
11  she did not rely upon the challenged label statements on the Swiss Miss products of the defendant.
12  *Id.* at 10.
13       Because of the complexity of the issues at play in the *Jones* action, Judge Breyer's Order
14  denying class certification does not–and, given the wide variety of the products and the numerous
15  label changes at issue, could not–speak to the merits of all of the food labeling cases filed in this
16  District. It addresses only whether Plaintiffs have met their burden in the *Jones* case.  In *Jones,*
17  Judge Breyer was faced with a uniquely complicated class action complaint setting forth a
18  multitude of facts that he found too difficult to certify into three coherent classes.  For this reason,
19  the Ninth Circuit's decision in the *Jones* action will not provide this Court with any definitive
20  answer to the question of when a class may be certified in a food labeling case and when it may not.
21  The appeal will simply decide whether Judge Breyer's discretion was properly utilized considering
22  the extremely convoluted case that was presented in the *Jones* action.  This Court has already
23  simplified this case by ordering the severance (and subsequent dismissal) of the Wrigley portion of
24  the case and the re-filing of the Mars case with its products separate from the Wrigley products.
25  Therefore, the class certification motion filed in this case will be much simpler and more focused
26  than the three separate motions for class certification filed in the *Jones* action.
27       **B.**    **The Facts of the *Gustavson* Case Are Similar to the *Dole* and *Blue Diamond***
28                ***Growers* cases and Distinct from the *Jones* case**

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS MARS, INC. AND MARS CHOCOLATE NORTH AMERICA, LLC'S MOTION TO STAY
CASE NO. 13-CV-04537-LHK

5

Rule 23(b)(3) damages classes were certified by this Court in the *Dole* and *Blue Diamond Growers* cases using the same damages model that will be used in the *Gustavson* action. Additionally, the Court found that the class definitions proposed in those two cases were sufficiently definite as to be ascertainable once a class was certified. In *Blue Diamond,* the Court found that the plaintiff "ha[d] precisely defined the class based on objective criteria: purchase of Blue Diamond almond milk products within the class period." *Werdebaugh v. Blue Diamond Growers,* Civil Action No. 12-CV-02724 (Dkt. 131 at p. 18) (N.D Cal. May 23, 2014). After an analysis of relevant Ninth Circuit precedent, the Court found that the identity of the class members need not be known at the time of certification, but that class members must be identifiable by objective criteria. *Id.* at p. 21. The class in *Blue Diamond* was simply defined and identifiable by objective criteria. In *Dole,* the same analysis was undertaken. The Court found that the class was ascertainable because the plaintiff had "precisely defined the class based on objective criteria: purchase of the identified Dole fruit products within the class period." *Brazil v. Dole Packaged Foods, LLC,* Civil Action No. 12-CV-01831-LHK (Dkt. 142 at p. 7) (N.D. Cal. May 30, 2014).

When the Plaintiff in this case moves for class certification, the class will be defined simply and precisely as were the classes in *Blue Diamond* and *Dole.* This will not be an instance, as it was in the *Jones* action, where the Court will be faced with three different class definitions, with each class having numerous label changes during the class. The Ninth Circuit's ruling on ascertainability in the *Jones* action, should it reach that issue, will not have a binding effect on the ascertainability of the class in this case because the class definitions will be fundamentally different, both in substance and form.

### III.  LEGAL STANDARD

A district court has discretionary power to stay proceedings in its own court under *Landis v. North American Co.*, 299 U.S. 248, 254, 81 L. Ed. 153, 57 S. Ct. 163 (1936). It is well-established that "the power to stay proceedings is incidental to the power inherent in every court to control the

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS MARS, INC. AND MARS CHOCOLATE NORTH AMERICA, LLC'S MOTION TO STAY
CASE NO. 13-CV-04537-LHK

6

disposition of the cases on its docket with economy of time, effort for itself, for counsel, and for litigants." *Id.*; *see also Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.")

A district court has discretion to stay civil proceedings in the interest of justice and in the light of the particular circumstances of the case. *Grubbs v. Irey*, 2008 U.S. Dist. LEXIS 26758, 2008 WL 906246, at *1 n. 5 (E.D. Cal. March 31, 2008) (citing *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375, 202 U.S. App. D.C. 345 (D.C. Cir. 1980)).

Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. Cal. 2005). In determining whether a stay is appropriate, a district court should consider the particular circumstances and competing interests involved in the litigation, such as: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1995). It is within the district court's discretion to grant or deny a stay after weighing these factors. *Id*.

### IV.   ARGUMENT

**A.   The Disposition of the Appeal in the *Jones* Action Will Not Be Binding Upon This Court in Considering Issues Unique to This Case**

In examining the appeal in the *Jones* action, the standard of review will be whether the Court abused its discretion in denying class certification to the Plaintiffs in that case. *See Evon v.*

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS MARS, INC. AND MARS CHOCOLATE NORTH AMERICA, LLC'S MOTION TO STAY
CASE NO. 13-CV-04537-LHK

7

1  *Law Offices of Sidney Mickell*, 688 F.3d 1015, 1028-1029 (9th Cir. Cal. 2012).  Therefore, in the
2  appeal of the *Jones* action, the Ninth Circuit Court of Appeals will only be examining the particular
3  decision of Judge Breyer based upon the particular facts of that case.  As noted, there are very few
4  similarities between the *Jones* action and this case.  The two cases are based upon different label
5  representations, different products, different parties, different class definitions and completely
6  dissimilar factual records.

7  The Court's decision whether to certify a class is subject to nearly unfettered discretion.
8  Class certification decisions are necessarily fact-specific to each case. Whatever the result of the
9  appeal of the *Jones* action, the result will not be binding upon this Court's decisions in this case.
10 Because of this, Defendants' motion to stay this action should be denied.

11 In fact, this Court has already exercised its discretion to decide upon the core issues of class
12 certification in *Werdebaugh v. Blue Diamond Growers*, No. 5:12-cv-02724, 2014 WL 2191901
13 (N.D. Cal. May 23, 2014) and *Brazil v. Dole Packaged Foods, LLC*, No. 5:12-cv-01831, 2014 WL
14 2466559 (N.D. Cal. May 30, 2014).  In both of those decisions, this Court undertook a thorough
15 examination of each component of Rule 23 and found that a class of consumers could be certified
16 under the requirements of Rule 23(b)(3): numerosity, commonality, typicality, adequacy, and
17 predominance.  Of course, this Court's class certification decisions in those two cases were fact-
18 specific and turned upon the particular aspects of the cases presented.  The Ninth Circuit's decision
19 in the *Jones* appeal will decide the five core aspects of class certification ***only as they apply to the***
20 ***Jones case.***  That is no reason to stay this case, with its entirely different set of facts, labels, parties
21 and legal claims.  Because the Ninth Circuit's decision in *Jones* will establish no binding precedent
22 upon this Court's discretion to decide the issues of this case, Defendant's motion for a stay should
23 be denied.

24        **B.**       **Plaintiff Will Be Prejudiced By Any Delay of This Case**

25 The first *Keating* factor is whether Plaintiff will be prejudiced by the delay of the case.  *See*
26 *Keating,* 45 F.3d 322 at 325. As noted, Plaintiff filed her original case against Wrigley Sales
27 Company, WM. Wrigley, Jr. Company, Mars Inc., and Mars Chocolate North America, LLC on
28 April 13, 2012.  The cases were later severed and a new complaint was filed in the instant case

against Mars, Inc. and Mars Chocolate North America, LLC on October 1, 2013. This had the effect of beginning a new procedural process for the case against Mars, Inc. and Mars Chocolate North America, LLC more than a year after Plaintiff's original complaint was filed. Plaintiff has already experienced a significant procedural delay in prosecuting her claims.

Moreover, Plaintiff and the Class will suffer harm by a delay in obtaining injunctive relief during the pendency of a stay. Mars continues to make the unlawful and misleading statements on the labels of its food products and it is assumed it would continue to do so if this case is stayed.

Defendants' motion for stay is based upon the speculation about what issues will be joined by the yet to be filed appellate briefs. Defendants further speculate that the Ninth Circuit's ruling in the *Jones* appeal will have a dispositive effect on certain aspects of this case. Defendants have made no definite showing of how the *Jones* appeal will affect this case, as indeed they cannot. They simply urge the Court to take a "wait and see" approach until *Jones* is decided. Defendants' request should be denied. The legitimate interest of the Plaintiff in pursuing her claims in a timely fashion outweighs any speculative effect that the *Jones* appeal may have on this case.

### C. Defendants Will Not Be Prejudiced By Proceeding with This Case While the *Jones* Appeal Is Pending

The second *Keating* factor is "the burden which any particular aspect of the proceedings may impose on defendants." *See Keating,* 45 F.3d 322 at 325. Defendants will suffer no prejudice by proceeding with their case in the usual manner while the *Jones* appeal is pending. Plaintiff will not gain an unequal or unfair advantage over Defendants simply by proceeding with the case through the discovery and motion for class certification phases while the appeal of the *Jones* action is pending.

### D. Judicial Economy Will Be Served By Denying Defendants' Stay Request

The third *Keating* factor is "the convenience of the court in the management of its cases, and the efficient use of judicial resources." *See Keating,* 45 F.3d 322 at 325. If a stay is granted in this case and the Ninth Circuit decides the *Jones* appeal on a limited basis (for instance, whether the *Jones* plaintiffs have standing) that does not provide substantial guidance to this Court in this case, then the stay will represent a wasted period of time when this case could have been moving through

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS MARS, INC. AND MARS CHOCOLATE NORTH AMERICA, LLC'S MOTION TO STAY
CASE NO. 13-CV-04537-LHK

9

discovery and class certification and toward conclusion on the Court's docket. The Court's interest in keeping the cases on its docket moving toward conclusion in an orderly manner should take precedence over Defendant's wish to delay this case while the *Jones* appeal is litigated.

### E. The Interest of Persons Not Parties to This Litigation Will Be Better Served By Denying Defendants' Stay Request

The fourth and fifth *Keating* factors are interrelated: the interests of persons not parties to the civil litigation and the interest of the public in the pending civil and criminal litigation. *See Keating,* 45 F.3d 322 at 325. The claims of persons not parties to this litigation, in this case absent class members, should be adjudicated in a timely way. Defendants' motion to stay will delay the determination of whether monetary and injunctive relief is proper for persons not parties to this litigation. In their perfunctory motion to stay, Defendants have not presented any analysis of the effect a stay will have on the rights of absent class members. Defendants have merely filed a self-serving, speculative motion stating that all of the issues in this case will be determined in the *Jones* appeal. Defendants have no way of knowing what issues the Ninth Circuit Court of Appeals will address in the appeal, nor do Defendants have any way of knowing whether the holding will have any bearing on the issues facing the Court in this case. For this reason, the interests of absent class members in having their claims timely adjudicated takes precedence over Defendants' interest in waiting for the results of the *Jones* appeal.

Moreover, Plaintiff's request for injunctive relief has a substantial effect upon the interest of the general public in this litigation. If Plaintiff's request for injunctive relief is granted, Defendant will no longer be allowed to utilize the misleading labels at issue in this case. The public has a substantial interest in the legality and clarity of the labels on food products. Granting Defendant's motion for a stay will delay the public's interest in benefitting from the injunctive relief requested in this case.

### F. Defendants' Motion to Stay is Premature

Discovery in this case has just begun. It is Plaintiff's belief, not yet verified through discovery, that there were no label changes on the relevant Mars products during the class period. Plaintiffs believe that the facts of this case are much simpler than those set forth in the *Jones* action,

where three different product lines had numerous label changes during the class period. Discovery on the issue of the relevant labels and other issues will develop a factual record to allow the Court to ascertain whether class certification is appropriate in this case.

By the same token, once the ConAgra appeal is fully briefed and Plaintiff's motion for class certification is filed in this case, the Court could consider whether there are issues that overlap between the two cases to the extent that a stay would be justified. The *Jones* action is further along in the procedural process than this case. Only after the facts of this case are developed will the Court be able to know whether the cases are sufficiently similar to justify a stay.

### G. The Regression Model for Calculating Class-Wide Damages Being Considered in the *Jones* Appeal Is Different From the Model Which Will Likely Be Presented In This Case

In *Jones,* Dr. Capps did not propose a regression model based upon hedonic factors because there were numerous label changes. Therefore, the regression model presented to the Court in *Jones* is different from the one that will likely be presented to the Court in this case when Plaintiff moves for class certification. If discovery continues to confirm that there were no label changes on the relevant Mars products during the class period, Dr. Capps will present the Court with a regression analysis known as "hedonic regression analysis." This type of regression analysis may be utilized to obtain an accurate measure of class-wide damages in the absence of a label change. The dependent variable in these situations corresponds to the prices of the identified products as well as prices of comparable products that are not mislabeled. With the use of this type of regression analysis, the supposition is that individual food products are composed of various attributes. The bundle of attributes defines the unit price, which implies that product prices can be decomposed into implicit prices for individual attributes. These implicit prices are called hedonic prices. The hedonic regression allows attribution of the impact on price associated with various product attributes including product labels.

Intrinsic values of the various attributes may be recovered by specifying the prices of food products as a function of these attributes. In this litigation, to implement the hedonic regression

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS MARS, INC. AND MARS CHOCOLATE NORTH AMERICA, LLC'S MOTION TO STAY
CASE NO. 13-CV-04537-LHK

11

approach, the prices of the Defendant's products with the labeling claim must be considered, as well as prices of comparable products (with or without the labeling claim). In this way, with the hedonic regression approach, the impact of the labeling claim on the prices of food products may be isolated. In the hedonic regression approach, attention is centered on pooling prices of similar food products, some of which have labeling claims and some of which do not.  Hence, the labeling claim is the attribute and its corresponding impact on price that must be calculated. Additionally, the hedonic regression analysis controls for other attributes such as brand, package size, seasonality of prices, and year-to-year fluctuations in prices attributed to economic conditions that may impact product prices  so that the impact of the labeling claim on prices of food products may be ascertained.

In *Dole* and *Blue Diamond Growers*, this Court held that the regression damages model is an adequate means of calculating class-wide damages because the model demonstrates the portion of the price increase that is attributable to the label statements while controlling for other factors that may impact sales such as price, seasonality and regional differences.  In both cases, classes of products were certified which contained the same misbranding statements throughout the class period which corresponds to information currently gathered in discovery in the present case.

Thus, in the *Jones* appeal, the Ninth Circuit will not be considering the same regression model that will likely be presented for this Court's consideration when Plaintiff's motion for class certification is filed.  Therefore, the *Jones* decision will provide this Court with no guidance on whether to certify a class based upon the hedonic regression analysis proposed by Dr. Capps.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Mars' Motion to Stay in its entirely.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS MARS, INC. AND MARS CHOCOLATE NORTH AMERICA, LLC'S MOTION TO STAY
CASE NO. 13-CV-04537-LHK

12

Dated: October 28, 2014.

Respectfully submitted,

 /s/ *J. Price Coleman*

J. Price Coleman
COLEMAN LAW FIRM
1100 Tyler Avenue, Suite 102
Oxford, MS 38655
Telephone: (662) 236-0047
Fax: (662) 513-0072
colemanlawfirmpa@bellsouth.net

Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
(408) 429-6506
pgore@prattattorneys.com

**CERTIFICATE OF SERVICE**

I hereby certify that I, J. Price Coleman, have on October 28, 2014, filed and served through the Court's ECF system a true and correct copy of the foregoing pleading.

 /s/ *J. Price Coleman*
J. Price Coleman

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS MARS, INC. AND MARS CHOCOLATE NORTH AMERICA, LLC'S MOTION TO STAY
CASE NO. 13-CV-04537-LHK

13